*In re* VLADIMIR P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Vladimir P., Respondent-Appellant).

First District (6th Division)   No. 1—95—2141

Opinion filed September 20, 1996.

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Julie Line Bailey, and Lindsey B. Levin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

After an adjudicatory hearing, the trial court, juvenile division, found minor respondent Vladimir P. to be delinquent and adjudicated him as a ward of the court. The delinquency findings were based on the aggravated assault (720 ILCS 5/12—2 (West 1994)) and hate crime (720 ILCS 5/12—7.1 (West 1994)) against Levi Bergovoy. The trial court placed respondent on probation for one year and ordered him to perform 200 hours of community service. On appeal, respondent concedes that he was properly found guilty of aggravated assault. He argues, however, that the evidence was insufficient to prove him guilty of a hate crime and that, in any event, the hate crime statute is unconstitutional. The relevant facts are as follows.

At approximately 3:30 p.m. on June 22, 1994, Bergovoy, a 13-year-old Orthodox Jewish boy, was walking home. He was wearing a head covering (yarmulke) and prayer tassels (tzitzis), symbolizing his religious beliefs. Bergovoy saw respondent, a co-respondent named Igor, and a third youth sitting on the steps of an apartment building. One or more of the youths started shouting at Bergovoy: "Fuck you Jew, get out of here Jew, I am going to kill you Jew, fuck you Jew." Bergovoy then saw a metal object fly in front of him. It was a knife. The boy became frightened that the youths would beat him up, and he ran home. He did not know who threw the knife or yelled at him.

Officer Val Roytman of the Chicago police department testified that after talking to Bergovoy, he went to the scene of the incident. He found the knife handle and blade. Roytman took the three youths into custody. At the station, respondent told Roytman that he and his two friends were playing with a knife. At some point the knife broke in two. Respondent said that they were bored and that Bergo-

voy looked "funny" when he went by. Igor then threw the knife handle while respondent threw the knife blade.

Bergovoy's mother testified that when her son arrived home he was nervous and frightened. He told her what the youths had yelled and that one of them threw a knife at him. Mrs. Bergovoy took her son outside to see who did this to him. When they reached the sidewalk, Igor approached and yelled, "Fuck you Jew." She grabbed her son, ran into their home and called the police.

Respondent's mother testified for respondent. He was 15 years old. Respondent knew what Bergovoy's head covering and tassels represented because he was Jewish. Respondent and his family had come to the United States from Russia two years prior to this incident. They left Russia because, as Jewish people, they did not feel safe.

## I. CONSTITUTIONALITY OF THE ILLINOIS HATE CRIME STATUTE

We initially consider respondent's contention that the Illinois hate crime statute (720 ILCS 5/12—7.1 (West 1994)) is unconstitutional. The relevant portion of the statute reads as follows:

> "(a) A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, he commits assault, battery, aggravated assault, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action or disorderly conduct as these crimes are defined in Sections 12—1, 12—2, 12—3, 16—1, 19—4, 21—1, 21—2, 21—3, 25—1, and 26—1 of this Code, respectively, or harassment by telephone as defined in Section 1—1 of the Obscene Phone Call Act." 720 ILCS 5/12—7.1 (West 1994).

Respondent contends that the statute violates his rights to free speech and thought, due process, and equal protection under the law guaranteed by the first and fourteenth amendments of the United States Constitution and article I, sections 2 and 4, of the Illinois Constitution of 1970. The State replies that respondent's constitutional arguments have already been disposed of by the United States Supreme Court's decision in *Wisconsin v. Mitchell*, 508 U.S. 476, 124 L. Ed. 2d 436, 113 S. Ct. 2194 (1993), and this court's decision in *People v. Johnston*, 267 Ill. App. 3d 526, 641 N.E.2d 898 (1994).

In *Wisconsin v. Mitchell*, the question before the United States Supreme Court was whether a Wisconsin penalty-enhancement stat-

ute was unconstitutional. The statute at issue increased the maximum penalty for an offense where a defendant " '[i]ntentionally selects the person against whom the crime ... is committed ... because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person ....' " *Mitchell*, 508 U.S. at 480, 124 L. Ed. 2d at 442, 113 S. Ct. at 2197, quoting Wis. Stat. § 939.645(1)(b) (1989-90). The Supreme Court rejected Mitchell's argument that the Wisconsin statute punished offenders for their bigoted thoughts and beliefs. Instead, the Court found that the statute was "aimed at conduct unprotected by the First Amendment." *Mitchell*, 508 U.S. at 487, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. According to the Court, "the Wisconsin statute singles out for enhancement bias-inspired conduct because this conduct is thought to inflict greater individual and societal harm." *Mitchell*, 508 U.S. at 487-88, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. "The State's desire to redress these perceived harms provides an adequate explanation for its penalty-enhancement provision over and above mere disagreement with offenders' beliefs or biases." *Mitchell*, 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. The Court in *Mitchell* also rejected the argument that the statute was "unconstitutionally overbroad because of its 'chilling effect' on free speech." *Mitchell*, 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. The crux of this argument was that an individual would suppress his thoughts or beliefs for fear that they might be used as evidence against him if he committed a crime covered by the statute in the future. The Court found this argument "simply too speculative a hypothesis." *Mitchell*, 508 U.S. at 489, 124 L. Ed. 2d at 447-48, 113 S. Ct. at 2201. Thus, the Supreme Court rejected Mitchell's arguments that the Wisconsin statute punished thought and was unconstitutionally overbroad.

In *People v. Johnston*, decided after *Mitchell*, defendant Johnston challenged the constitutionality of section 12—7.1 (Ill. Rev. Stat. 1989, ch. 38, pars. 12—7.1(a), (b) (now 720 ILCS 12—7.1(a), (b) (West 1994))). *Johnston*, 267 Ill. App. 3d at 529, 641 N.E.2d at 900. Section 12—7.1, now titled "Hate crime," was then titled "Ethnic intimidation." On appeal, Johnston contended that the ethnic intimidation statute violated "the due process and equal protection clauses of the fourteenth amendment and also *** the free speech provision of the United States Constitution." Johnston also contended that the statute violated "the State Constitution's due process and free speech provisions of article I." *Johnston*, 267 Ill. App. 3d at 529, 641 N.E.2d at 900. In dismissing these contentions, the *Johnston* court stated:

> "Johnston admits in his reply brief that his United States Constitution claims against the ethnic intimidation statute have been

disposed of by the United States Supreme Court decision in *Wisconsin v. Mitchell* [citation]. Nevertheless, Johnston's reply brief attempts to raise the issue that the statute violates the Illinois Constitution of 1970 in article I, sections 2 and 4 [citation]. However, Johnston cites neither any language of article I, any court decisions, nor any legislative history to support his contention, and we find no support for a theory that the Illinois Constitution grants the scope of protection Johnston seeks to nullify this statute. A statute carries a strong presumption of constitutionality, and the burden is on the party challenging it to establish its constitutional invalidity. [Citation.] That burden was not met in this case." *Johnston*, 267 Ill. App. 3d at 535, 641 N.E.2d at 904.

In the present case, we agree with the State that *Wisconsin v. Mitchell* and *People v. Johnston* essentially dispose of respondent's constitutional arguments. Respondent argues, however, that *Mitchell* is inapplicable because the statute reviewed there was a penalty-enhancement statute while section 12—7.1 creates a separate offense. Respondent also argues that neither *Mitchell* nor *Johnston* fully resolves whether hate crime statutes violate offenders' due process and equal protection rights. Thus, we will elaborate.

A. Freedom of Expression

■ Initially, under *Mitchell*, we reject respondent's argument that section 12—7.1 creates a thought crime in violation of the first amendment. U.S. Const., amend. I. It is true, as respondent points out, that the Wisconsin statute differs from the Illinois statute in that the statute in *Mitchell* was a penalty-enhancement statute while section 12—7.1 creates a crime within itself. Nevertheless, this distinction does nothing to diminish the applicability of the Supreme Court's analysis on the issue of whether section 12—7.1 impermissibly criminalizes thought. As in *Mitchell*, we find that the statute at issue here does not punish an individual for merely thinking hateful thoughts or expressing bigoted beliefs. Instead, section 12—7.1 punishes an offender's criminal conduct in choosing a victim by reason of those beliefs or hatred, and then committing one of the criminal acts included in section 12—7.1. As the unanimous Court in *Mitchell* stated, "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." *Mitchell*, 508 U.S. at 484, 124 L. Ed. 2d at 444, 113 S. Ct. at 2199.

■ Respondent also argues that the Illinois statute impermissibly makes speech an element of a hate crime. We disagree. Even without evidence of bigoted speech, a hate crime can be committed if the trier of fact, through circumstantial evidence, concludes beyond a reason-

able doubt that the victim was chosen "by reason of [his] actual or perceived race, color, creed, religion" or other core characteristics enumerated in section 12—7.1. 720 ILCS 5/12—7.1 (West 1994). Furthermore, it is well settled that the first amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. *Mitchell*, 508 U.S. at 484, 124 L. Ed. 2d at 444, 113 S. Ct. at 2199. In the present case, the statements— "Fuck you Jew, get out of here Jew, I am going to kill you Jew, fuck you Jew"—were not elements of the crime. Rather, along with evidence of Bergovoy's manner of dress, they were properly introduced by the State as circumstantial evidence that Bergovoy was chosen as a victim because he was Jewish.

■ We also reject respondent's argument that section 12—7.1 is "unconstitutionally overbroad" in that it has a "chilling effect" on free speech causing a person to suppress his beliefs for fear of them being used as evidence against him in the future. This identical theory was flatly rejected by the United States Supreme Court in *Mitchell*. Stating that "[t]he sort of chill envisioned here is far more attenuated and unlikely than that contemplated in traditional 'overbreadth' cases," the *Mitchell* Court dismissed this argument as "too speculative." *Mitchell*, 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201.

We further note that other states have upheld statutes, like section 12—7.1, that create a separate offense for choosing a victim of an underlying crime based on certain characteristics such as race and religion. The state Supreme Courts of Ohio, Missouri, Iowa, and Washington have all found *Mitchell* controlling and dispositive of first amendment challenges to such statutes. See *State v. Wyant*, 68 Ohio St. 3d 162, 164, 624 N.E.2d 722, 724 (1994) (Wright, J., dissenting); *State v. Vanatter*, 869 S.W.2d 754 (Mo. 1994); *State v. McKnight*, 511 N.W.2d 389 (Iowa 1994), *cert. denied*, 511 U.S. 1113, 128 L. Ed. 2d 675, 114 S. Ct. 2116 (1994); *State v. Talley*, 122 Wash. 2d 192, 858 P.2d 217 (1993). In *Vanatter*, the Supreme Court of Missouri explained:

> "While 574.093 admittedly creates a new motive-based crime, its practical effect is to provide additional punishment for conduct that is already illegal but is seen as especially harmful because it is motivated by group hatred. It is clear from *Mitchell* that enhanced punishment for criminal conduct on account of a defendant's motives of bias or hatred toward a protected group is consistent with the United States Constitution." *Vanatter*, 869 S.W.2d at 757.

We agree with this reasoning and find that section 12—7.1 does not violate the first amendment. U.S. Const., amend. I.

■ Finally, we reject respondent's argument that even if the first amendment of the United States Constitution is inapplicable, section 12—7.1 violates article I, section 4, of the Illinois Constitution. Respondent argues that this section affords him a broader freedom of expression than the first amendment. Yet, it is unnecessary to determine this based on our finding that section 12—7.1 does not punish expression, it punishes criminal conduct. Furthermore, we note that the *Johnston* court specifically stated that it found "no support for a theory that the Illinois Constitution grants the scope of protection" necessary to nullify section 12—7.1. *Johnston*, 267 Ill. App. 3d at 535, 641 N.E.2d at 904. Thus, this argument must fail.

## B. Due Process

■ We next turn to respondent's due process arguments. Respondent argues that section 12—7.1 is "impermissively vague" and gives "inadequate notice of prohibited conduct" in violation of the fourteenth amendment of the federal constitution and article I, section 2, of the state constitution. Initially, respondent points to the statutory language "by reason of" and argues that this language makes it unclear whether a core characteristic listed in section 12—7.1 must be the sole reason for choosing a victim or merely one of several reasons. We disagree. We find nothing in the language of the statute that would prohibit a person with "mixed motives" from being prosecuted under the statute. Nor do we agree with respondent that this language promotes arbitrary enforcement by police officers. The phrase "by reason of" clearly indicates for police officers and offenders that there must be a causal connection between a victim's race, religion, etc., and the offender's reason for choosing that person as a victim. In finding that the phrase "by reason of" is not unconstitutionally vague, we note with approval the analysis of the Supreme Court of Washington. In *State v. Talley*, that court rejected a similar argument in the following manner:

> "[I]n ordinary usage 'because of' means 'by reason of' or 'on account of.' [Citation.] When read as a whole, this language is clear and provides adequate notice that the prohibited conduct is the selection of the crime victims from certain specified categories." *Talley*, 122 Wash. 2d at 213, 858 P.2d at 229.

We are also unpersuaded by respondent's attempt to illustrate the vagueness of section 12—7.1 by offering hypothetical situations that he claims "may or may not" be covered by the statute. In fact, our research reveals that a recent decision by the fifth district of this court resolves the central question in each of respondent's hypotheticals. For example, respondent argues that it is unclear whether sec-

tion 12—7.1 covers a situation where a bigoted white man threatens or attacks another white man because the second man dates an African-American woman. In *In re B.C.*, 277 Ill. App. 3d 1085, 661 N.E.2d 1148 (1996), the court held that, in situations where an alleged victim is neither a member of the group to whom the hatred is directed towards nor perceived by the offender to be a member of that group, section 12—7.1 is inapplicable. Thus, in light of the *B.C.* decision, and our agreement with the reasoning in *Talley*, we reject respondent's void-for-vagueness argument and find that his federal and state due process rights have not been violated.

### C. Equal Protection

■ We next turn to respondent's argument that section 12—7.1 violates his right to equal protection under the law of the United States and the State of Illinois. Specifically, respondent argues that, because of the beliefs they hold and express, offenders of section 12.7—1 are treated differently from others who commit the same predicate offenses enumerated in section 12—7.1. Yet, proponents of hate crime statutes persuasively counter such an equal protection argument by showing that offenders of hate crimes are simply not similarly situated with those who commit the crimes for different reasons. *Crimes Motivated By Hatred: The Constitutionality and Impact of Hate Crime Legislation in the United States*, 1 Syracuse J. Legis. & Pol'y 29, 58 (Spring 1995) (hereinafter *Crimes Motivated By Hatred*). It has been widely documented that victims of bias-motivated crimes suffer harmful psychological effects, and these crimes are more likely to provoke retaliatory crimes and incite political unrest. *Mitchell*, 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201; *Crimes Motivated By Hatred*, 1 Syracuse J. Legis. & Pol'y, at 32-34. "In light of the greater degree of harm suffered by minority groups that have been systematically victimized, the majority of courts across the country have agreed that they deserve special attention." *Crimes Motivated By Hatred*, 1 Syracuse J. Legis. & Pol'y, at 58; see, *e.g.*, *Talley*, 122 Wash. 2d at 216, 858 P.2d at 230 ("We find no violation of equal protection"). We likewise feel that the Illinois General Assembly justifiably enacted section 12—7.1, and we find no need to invalidate the statute on equal protection grounds or on any other constitutional basis.

### II. PROOF BEYOND A REASONABLE DOUBT

We now turn to respondent's contention that the evidence was insufficient to prove him guilty of a hate crime.

■ The State must prove the offenses alleged in delinquency peti-

tions beyond a reasonable doubt. *In re W.C.*, 167 Ill. 2d 307, 657 N.E.2d 908 (1995). When a minor challenges that sufficiency of evidence on appeal, we will not overturn a trial court's finding unless, after reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the offense beyond a reasonable doubt. *W.C.*, 167 Ill. 2d at 336, 657 N.E.2d at 923.

■ In challenging the sufficiency of the evidence as to the hate crime, respondent relies principally on the fact that there was no evidence showing that he shouted at Bergovoy. The evidence, however, demonstrates that, even if it was Igor who uttered the offensive religious slurs, respondent made no effort to leave the scene or disassociate himself from Igor. Rather, as respondent himself told Officer Roytman, Igor threw the knife handle at Bergovoy and respondent followed by throwing the blade. Under these circumstances, the trier of fact was entitled to infer that the youths were not acting independently but, rather, in concert and that respondent participated in all of the acts.

Respondent suggests that since he is Jewish, he cannot be guilty of a hate crime under these circumstances. We disagree. Immediately after hearing anti-Semitic shouts, respondent admittedly committed an assault on the 13-year-old target of the abuse. The trial judge could properly infer that respondent's motive for his conduct was not the result of boredom, but was caused "by reason of" Bergovoy's religion. The State proved respondent's participation in the hate crime beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ZWICK, P.J., and RAKOWSKI, J., concur.