THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS E. NITZ, Defendant-Appellant.

Third District    No. 3—96—0276

Opinion filed November 15, 1996.

Donovan S. Robertson (argued), of Cyr/Robertson, of Moline, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Terry A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Douglas E. Nitz, who is white, appeals from his conviction on two counts of the offense of hate crime (720 ILCS 5/12—7.1 (West 1994)), based on his racially motivated harassment of his neighbor, Rochelle Gaines, who is African-American. On appeal, Nitz

raises several constitutional challenges to the Illinois hate crime statute. For the reasons that follow, we affirm.

## FACTS

Nitz was charged with three counts of hate crime (720 ILCS 5/12—7.1 (West 1994)) and one count of contributing to the delinquency of a minor (720 ILCS 130/2a (West 1994)). The hate crime charges were based on the predicate crimes of disorderly conduct (720 ILCS 5/26—1 (West 1994)) and misdemeanor criminal damage to property (720 ILCS 5/21—1 (West 1994)). The alleged incidents occurred in August 1995.

The Nitz family lives across the street from the Gaines family in Milan, Illinois. The State maintained that, on one occasion, Nitz's son, Brian, became engaged in a shouting match with Gaines' children. As things escalated, Brian threw a glass bottle and some rocks at the Gaines residence. Gaines testified that some of the rocks struck her house and a glass fragment struck her. As Brian threw the items he screamed at Gaines, calling her a "black nigger bitch" several times.

Nitz, a self-described "incomplete paraplegic," emerged from his house in his wheelchair to determine what was going on. Gaines testified that Nitz watched Brian throw things and yell racial epithets and did nothing to intervene. In addition, Nitz yelled at Gaines that "if it wasn't for the nigger moving in the neighborhood we wouldn't have all these problems. Ever since this nigger moved in the neighborhood has been nothing but problems. Niggers is nothing but problems. What they needs to do is go back to Africa." Gaines testified that after approximately 15 minutes of abuse, Brian's mother emerged from the house and forced Brian inside. Gaines was extremely upset, hurt, and moved to tears by the incident. As a result, she called the Milan police department.

On another occasion, Nitz and a friend of his were standing on the street removing a police sticker from Nitz's car when Gaines and her children pulled into her driveway. Gaines testified that as she and her children walked towards their front door, Nitz or his friend spit on her and Nitz called her a "black bitch" and a "fucking nigger bitch." Nitz told Gaines that he "was sick and tired of the bullshit" and there had "been nothing but problems" since "you niggers moved into the neighborhood." Gaines said the encounter left her in tears and ashamed because her children were subjected to Nitz's use of profanity and racial slurs. She again notified the Milan police department regarding Nitz's behavior.

Gaines testified that a few days later, Nitz, accompanied by a

friend, confronted her and accused her of calling the police to get his car towed. Nitz told her that she was a "damned nigger bitch" and said he would "get" her. Gaines testified that she was alarmed and disturbed by Nitz's unspecified threat. Consequently, she called the Milan police department, again complaining about Nitz's racial slurs.

Several of Nitz's neighbors testified that they witnessed numerous arguments and disputes between Nitz and Gaines. Nitz referred to more than one neighbor as a "nigger lover" when he perceived that a neighbor was intervening in the disputes.

Captain Steven Doyle, a 26-year veteran of the Milan police department, testified that, for the year 1995, the Milan police department responded to 65 calls and incidents regarding the Nitz and Gaines households.

Ultimately, following a jury trial, Nitz was acquitted on two counts of violating the hate crime statute and was convicted on two other counts of committing a hate crime. Additionally, Nitz was acquitted of contributing to the delinquency of a minor. At his sentencing hearing, the trial court fined Nitz and placed him on 30 months' probation, including a term of six months in the Rock Island County jail. This timely appeal followed.

## ISSUES

Initially, we note that Nitz does not challenge his sentence and concedes to the underlying conduct that resulted in the hate crime charges. Nitz claims that the hate crime statute is an unconstitutional infringement on free speech, is unconstitutionally vague and unconstitutionally overbroad. Based upon our review of the record and applicable law, we find no constitutional problems.

## ANALYSIS

■ The Illinois hate crime statute replaces the crime of ethnic intimidation (Ill. Rev. Stat. 1991, ch. 38, par. 12—7.1). Our hate crime statute reads:

> "A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, he commits assault, battery, aggravated assault, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action or disorderly conduct." 720 ILCS 5/12—7.1 (West 1994)).

A first offense under the statute is punishable as a Class 4 felony.

Nitz's hate crime convictions are based on the predicate crime of disorderly conduct. A person commits disorderly conduct "when he

knowingly \*\*\* [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26—1(a)(1) (West 1994). A violation of this section of the statute is punishable as a Class C misdemeanor.

There is no dispute that Nitz's conduct amounted to disorderly conduct, which formed the basis of the hate crime charge. Nor does Nitz suggest that Illinois' disorderly conduct statute is unconstitutional. See *People v. Raby*, 40 Ill. 2d 392, 240 N.E.2d 595 (1968).

## I. Free Speech

First, Nitz claims that the hate crime statute is unconstitutional because it impermissibly infringes on his free speech rights. We do not agree.

Initially, we note that a statute is presumptively valid and a party challenging the constitutionality of a statute bears the burden of establishing its invalidity. *People v. Warren*, 173 Ill. 2d 348, 355 (1996). Whenever reasonably possible, we will construe a statute so as to sustain its constitutionality. *Warren*, 173 Ill. 2d at 355.

■ Our analysis is controlled by the United States Supreme Court's decision in *Wisconsin v. Mitchell*, 508 U.S. 476, 124 L. Ed. 2d 436, 113 S. Ct. 2194 (1993). The Wisconsin statute examined in *Mitchell* is a penalty-enhancement statute, which increases the penalty for various crimes based on the selection of a victim who is a member of a protected class. The Illinois hate crime statute is not technically a penalty-enhancement statute. Instead, section 12—7.1 creates a crime within itself. However, this does not diminish the applicability of the Supreme Court's analysis in *Mitchell* to the question of whether or not our statute unconstitutionally infringes upon free speech. See *In re Vladimir P.*, 283 Ill. App. 3d 1068, 1074 (1996).

In *Mitchell*, the Court rejected a first amendment challenge to the Wisconsin statute and concluded that the statute was "aimed at *conduct unprotected by the First Amendment.*" (Emphasis added.) *Mitchell*, 508 U.S. at 487, 124 L. Ed. 2d at 447, 113 S. Ct. at 2200. The Court distinguished its decision in *R.A.V. v. City of St. Paul*, 505 U.S. 377, 120 L. Ed. 2d 305, 112 S. Ct. 2538 (1992), which struck down an ordinance that prohibited the use of fighting words which insulted on the basis of race, color, creed, religion or gender. *R.A.V.*, 505 U.S. at 391, 120 L. Ed. 2d at 323, 112 S. Ct. at 2547. The Court found the ordinance in *R.A.V.* invalid because it prohibited a class of fighting words based on the content of the speech. *R.A.V.*, 505 U.S. at 391, 120 L. Ed. 2d at 323, 112 S. Ct. at 2547. The ordinance struck down in *R.A.V.* was directed at bias-motivated speech, while the statute in *Mitchell* was aimed at conduct unprotected by the first amendment.

See *Mitchell*, 505 U.S. at 487, 124 L. Ed. 2d at 446-47, 113 S. Ct. at 2200-01.

In *Vladimir P.*, the Appellate Court, First District, considered a hate crime case based on the predicate crime of aggravated assault (720 ILCS 5/12—2 (West 1994)). In *Vladimir P.*, several minors yelled obscene insults at a Jewish youth, based on his religion. One youth threw a knife handle at the victim, and the respondent threw the knife blade. The victim was not hit by the handle or the blade. Following *Mitchell*, the first district rejected the respondent's claim that the hate crime statute punishes protected speech. *Vladimir P.*, 283 Ill. App. 3d at 1073. The court in *Vladimir P.* stated that the hate crime statute "does not punish an individual for merely thinking hateful thoughts or expressing bigoted beliefs. Instead, section 12—7.1 punishes an offender's criminal conduct in choosing a victim by reason of those beliefs or hatred, and then committing one of the criminal acts included in section 12—7.1." *Vladimir P.*, 283 Ill. App. 3d at 1073. We agree with this analysis.

■ Nitz claims that our inquiry should reach a different result from *Vladimir P.* because the predicate crime of disorderly conduct can result in a punishment based on mere speech alone. Again, we do not agree with the defendant's argument. We note initially that, in *Mitchell*, the Supreme Court upheld the constitutionality of the Wisconsin statute that included disorderly conduct as one of the predicate crimes. See Wis. Stat. § 947.01 (1994). Even so, we recognize that *Mitchell* and *Vladimir P.* do not involve hate crime charges predicated solely on disorderly conduct.

Nonetheless, Nitz is incorrect in asserting that the Illinois hate crime statute, predicated on the offense of disorderly conduct, permits punishment based on the use of offensive words. In *Raby*, our supreme court rejected the proposition that the disorderly conduct statute punishes speech protected by the first amendment. *Raby*, 40 Ill. 2d at 397, 240 N.E.2d at 598. The court noted that "[u]nder no circumstances would the [disorderly conduct] statute 'allow persons to be punished merely for peacefully expressing unpopular views.' " *Raby*, 40 Ill. 2d at 397, 240 N.E.2d at 598. As the court stated in *People v. Bradshaw*, 116 Ill. App. 3d 421, 452 N.E.2d 141 (1983):

> " 'Vulgar language, however distasteful or offensive to one's sensibilities, does not evolve into a crime because people standing nearby stop, look, and listen. The State's concern becomes dominant only when a breach of the peace is provoked by the language.' " *Bradshaw*, 116 Ill. App. 3d at 422, 452 N.E.2d at 142, quoting *People v. Douglas*, 29 Ill. App. 3d 738, 742-43, 331 N.E.2d 359, 363 (1975).

It is well-settled law that in order to sustain a disorderly conduct charge, the State must prove the defendant performed an act in an unreasonable manner *and* that the defendant's action alarmed and disturbed another person so that a breach of the peace occurred. 720 ILCS 5/26—1(a)(1) (West 1994). Following our review, we find ample evidence in the record supporting the trier of fact's conclusion that the State proved, beyond a reasonable doubt, all of the elements of the disorderly conduct statute.

Because Nitz's disorderly conduct conviction is not based solely on unpopular or bigoted speech, we find no infringement on the constitutionally protected right of free speech. In addition, we find *Mitchell* and *Vladimir P.* persuasive authority for our conclusion that the Illinois hate crime statute is not unconstitutional.

## II. Vagueness

Nitz argues that the hate crime statute is unconstitutionally vague because it punishes an offender when, "by reason of" a person's race, one commits a listed crime. Nitz bases his claim on the assertion that the statute does not say whether bigotry must be the single motivation of the actor in committing the crime or one of several motivations. The first district has considered and rejected the same argument. *Vladimir P.*, 283 Ill. App. 3d at 1075. Again, we agree with the first district's conclusion.

■ Due process requires that a statute must not be so vague that a person of common intelligence has to guess at its meaning or application. *Warren*, 173 Ill. 2d at 356. Where the statute does not impinge upon first amendment rights, due process is satisfied if: (1) the statute contains sufficiently definite prohibitions so that, when measured by common understanding and practice, a person of ordinary intelligence has fair warning as to what conduct is prohibited; and (2) the statute provides law enforcement officers and triers of fact with sufficiently definite standards so that its application does not depend merely on private conceptions. *Warren*, 173 Ill. 2d at 356.

■ In terms of common understanding, the phrase "by reason of" means "because of." There is no requirement that the statute specify whether, for instance, racism must be the main motivation, or one motivation among many, for the statute to apply. We join in the first district's conclusion: "We find nothing in the language of the statute that would prohibit a person with 'mixed motives' from being prosecuted under the statute." *Vladimir P.*, 283 Ill. App. 3d at 1075.

We find the plain language of the hate crime statute clearly states, in terms commonly used and understood, (1) the nature of the

offense and (2) the guidelines for the proper application of the statute. *Warren*, 173 Ill. 2d at 357. As a result, we find the Illinois hate crime statute is not unconstitutionally vague.

## III. Overbreadth

Finally, Nitz contends that the hate crime statute is unconstitutionally overbroad because of an alleged "chilling effect" on free speech. Again, we disagree.

A statute may be deemed overbroad when it discourages people from exercising their first amendment rights because of fear of punishment. *People v. Anderson*, 148 Ill. 2d 15, 26, 591 N.E.2d 461, 466 (1992). The overbreadth doctrine should be employed sparingly and only when a challenger can prove that a statute's overbreadth is real and substantial. *Anderson*, 148 Ill. 2d at 26, 591 N.E.2d at 466. No such showing has been made in this case.

Nitz offers no case law or authority in support of his claim that the statute is overbroad other than to say that some may fear prosecution for uttering protected speech. As we previously explained, Nitz misconstrues the nature of the statute. The statute clearly does not punish people for the mere use of words. In addition, the Supreme Court, in *Mitchell*, flatly rejected the argument that the Wisconsin hate crime statute was unconstitutionally overbroad because of an alleged chilling effect on free speech. *Mitchell*, 508 U.S. at 488, 124 L. Ed. 2d at 447-48, 113 S. Ct. at 2201; see also *Vladimir P.*, 283 Ill. App. 3d at 1074. Following the analysis in *Mitchell* and *Vladimir P.*, we conclude that the Illinois hate crime statute is not unconstitutionally overbroad.

## CONCLUSION

For the reasons indicated, we find the Illinois hate crime statute is constitutional in all respects. We determine that the statute punishes only racially motivated conduct and does not unconstitutionally infringe upon individual free speech rights. In addition, we find the statute is not unconstitutionally vague or overbroad. Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SLATER and MICHELA, JJ., concur.