THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee v. KENNETH W. ROKICKI, Defendant-Appellant.

Second District    No. 2—98—0256

Opinion filed September 28, 1999.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and David A. Hibben, of Chicago, for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Kenneth Rokicki, was charged in a single-count indictment with hate crime (720 ILCS 5/12—7.1 (West 1994)) based on the predicate offense of disorderly conduct (720 ILCS 5/26—1(a)(1) (West 1994)). Following a bench trial, defendant was convicted, sentenced to 2 years' probation, and ordered, *inter alia*, to perform 100 hours' community service and attend anger management counseling. Defendant timely appeals, contending that the hate crime statute is unconstitutionally overly broad and chills expression protected by the first amendment to the United States Constitution (U.S. Const., amend. I). We affirm.

## FACTS

Before trial, defendant moved to dismiss the charges alleging, *inter alia*, that the hate crime statute was unconstitutional. The trial court denied defendant's motion. Defendant waived his right to a jury, and the matter proceeded to a bench trial.

Donald Delaney testified that he is the store manager of a Pizza Hut in South Elgin. On October 20, 1995, at approximately 1:30 p.m., defendant entered the restaurant. The victim was a server there and took defendant's order. The victim requested payment, and defendant refused to tender payment to him. Delaney, who was nearby, stepped in and completed the sale. Defendant told Delaney not to let "that faggot" touch his food. When defendant's pizza came out of the oven, Delaney was on the telephone, and the victim began to slice the pizza. Delaney saw defendant approaching the counter with an irritated expression and hung up the telephone. Before Delaney could intervene, defendant leaned over the counter and began yelling at the victim and pounding his fist on the counter. Defendant directed a series of epithets at the victim including "Mary," "faggot," and "Molly Homemaker." Defendant continued yelling for 10 minutes and, when not pounding his fist, shook his finger at the victim. Delaney asked defendant to leave several times and threatened to call the police. However, Delaney did not call the police because he was standing between the victim and defendant and feared that defendant would physically attack the victim if Delaney moved. Eventually Delaney returned defendant's money and defendant left the establishment.

The victim testified that he was working at the South Elgin Pizza Hut on October 20, 1995. Defendant entered the restaurant and ordered a pizza. When defendant's pizza came out of the oven, the victim began to slice it. Defendant then began yelling at the victim and pounding his fist on the counter. Defendant appeared very angry and seemed very serious. The victim, who is much smaller than defendant, testified that he was terrified by defendant's outburst and remained frightened for several days thereafter. Eventually, the manager gave defendant a refund and defendant left the restaurant. The victim followed defendant into the parking lot, recorded the license number of his car, and called the police.

Christopher Merritt, a sergeant with the South Elgin police department, testified that, at 2:20 p.m. on October 20, 1995, defendant entered the police station and said he wished to report an incident at the Pizza Hut. Defendant told Merritt that he was upset because a homosexual was working at the restaurant and he wanted someone "normal" to touch his food. Defendant stated that he became angry when the victim touched his food. He called the victim a "Mary,"

pounded on the counter, and was subsequently kicked out of the restaurant. Merritt asked defendant what he meant by a "Mary," and defendant responded that a "Mary" was a homosexual. Merritt conducted only a brief interview of defendant because shortly after defendant arrived at the police station Merritt was dispatched to the Pizza Hut.

Deborah Hagedorn, an employee at the Pizza Hut in St. Charles, testified that in 1995 defendant came into the restaurant and asked for the address of the district manager for Pizza Hut. When asked why he wanted the address, defendant complained that he had been arrested at the South Elgin restaurant because he did not want a "f------ faggot" touching his food.

Defendant testified that he was upset because the victim had placed his fingers in his mouth and had not washed his hands before cutting the pizza. Defendant admitted calling the victim "Mary" but denied that he intended to suggest the victim was a homosexual. Defendant stated that he used the term "Mary" because the victim would not stop talking and "it was like arguing with a woman." Defendant denied yelling and denied directing other derogatory terms towards to the victim. Defendant admitted giving a statement to Merritt but denied telling him that he pounded his fist on the counter or used homosexual slurs. Defendant testified that he went to the St. Charles Pizza Hut but that Hagedorn was not present during his conversation with the manager. Defendant testified that he complained about the victim's hygiene but did not use any homosexual slurs.

The trial court found defendant guilty of hate crime. In a posttrial motion, defendant again argued that the hate crime statute was unconstitutional. The trial court denied defendant's motion and sentenced him to two years' probation. As part of the probation, the trial court ordered defendant not to enter Pizza Hut restaurants, not to contact the victim, to perform 100 hours' community service, and attend anger management counseling. Defendant timely appeals.

## ISSUE

On appeal, defendant does not challenge the sufficiency of the evidence against him. Defendant contends only that the hate crime statute is unconstitutional when the predicate offense is disturbing the peace. Defendant argues that the statute is overly broad and impermissibly chills free speech.

## ANALYSIS

■■■ The constitutionality of a statute is a matter of law which we review *de novo. People v. Fisher*, 184 Ill. 2d 441, 448 (1998). The Illinois hate crime statute is contained in section 12—7.1 of the Crimi-

nal Code of 1961, and the version that was in effect on December 20, 1995, reads in part as follows:

"A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, [she or] he commits assault, battery, aggravated assault, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action or disorderly conduct ***." 720 ILCS 5/12—7.1(a) (West 1994).

We note that the language of the hate crime statute has been amended but conclude that those amendments have no bearing on the issue presented in this case. See 720 ILCS 5/12—7.1 (West 1998). Defendant's conviction was based on the predicate offense of disorderly conduct. A person commits disorderly conduct when she or he knowingly "[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26—1(a)(1) (West 1994). Disorderly conduct is punishable as a Class C misdemeanor. 720 ILCS 5/26—1(b) (West 1994). However, hate crime is punishable as a Class 4 felony for a first offense and a Class 2 felony for a second or subsequent offense. 720 ILCS 5/12—7.1(b) (West 1994).

Defendant notes that the Appellate Court, Third District, was faced with a similar challenge to the hate crime statute in *People v. Nitz*, 285 Ill. App. 3d 364 (1996). The *Nitz* court held that the hate crime statute, when predicated on disorderly conduct, was constitutional and neither infringed upon a defendant's free speech rights directly nor was overly broad because of its "chilling effect" on free speech. *Nitz*, 285 Ill. App. 3d at 371. However, defendant urges us to reconsider the *Nitz* analysis and hold the hate crime statute overly broad.

### 1. Infringement Upon Free Speech Rights

The issue presented in this case highlights the limits imposed by the first amendment on a state's power to regulate its citizens' speech and thought. In a pair of cases decided in 1992 and 1993, the Supreme Court staked out the boundary between a state's unconstitutional regulation of unpopular beliefs in the marketplace of ideas and the permissible regulation of conduct motivated by those beliefs. See *R.A.V. v. City of St. Paul*, 505 U.S. 377, 120 L. Ed. 2d 305, 112 S. Ct. 2538 (1992); *Wisconsin v. Mitchell*, 508 U.S. 476, 124 L. Ed. 2d 436, 113 S. Ct. 2194 (1993), rev'g 169 Wis. 2d 153, 485 N.W.2d 807 (1992). Our analysis of defendant's claims is controlled by these two cases, and we will begin by examining them.

In *R.A.V.*, the petitioner was alleged to have burned a crudely constructed wooden cross on the lawn of the residence of an African-American family and was charged with violating St. Paul's Bias-Motivated Crime Ordinance. The ordinance declared that anyone who places a burning cross, Nazi swastika, or other symbol on private or public property knowing that the symbol would arouse " 'anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.' " *R.A.V.*, 505 U.S. at 380, 120 L. Ed. 2d at 315, 112 S. Ct. at 2541, quoting St. Paul, Minn., Legis. Code § 292.02 (1990). The Minnesota Supreme Court found that the ordinance was constitutional because it could be construed to reach only "fighting words," which are outside the protection of the first amendment. *R.A.V.*, 505 U.S. at 380, 120 L. Ed. 2d at 316, 112 S. Ct. at 2541. The United States Supreme Court held that, even when a statute addresses speech that is otherwise proscribable, the state may not discriminate on the basis of the content. *R.A.V.*, 505 U.S. at 387, 120 L. Ed. 2d at 320, 112 S. Ct. at 2545. The *R.A.V.* Court then found that the St. Paul ordinance violated the first amendment because it would allow the proponents of racial tolerance and equality to use fighting words to argue in favor of tolerance and equality but would prohibit similar use by those opposed to racial tolerance and equality. *R.A.V.*, 595 U.S. at 391-92, 120 L. Ed. 2d at 323, 112 S. Ct. at 2547-48.

One year later, the United States Supreme Court revisited the issue in *Mitchell*. The defendant in *Mitchell* was convicted of aggravated battery, which carried a maximum term of two years' incarceration. However, the defendant was sentenced to a term of four years' incarceration under a Wisconsin statute that enhanced the penalty for an offense when the defendant intentionally selected a victim because of his or her " 'race, religion, color, disability, sexual orientation, national origin or ancestry.' " *Mitchell*, 508 U.S. at 480-81, 124 L. Ed. 2d at 442, 113 S. Ct. at 2197, quoting Wis. Stat. § 939.645(1)(b) (1989-90). The Wisconsin Supreme Court reversed the conviction and held that the statute was unconstitutional under *R.A.V.*, holding that the legislature cannot "criminalize bigoted thought with which it disagrees." *State v. Mitchell*, 169 Wis. 2d 153, 171, 485 N.W.2d 807, 815 (1992). The United States Supreme Court distinguished *R.A.V.* and reversed. *Mitchell*, 508 U.S. at 487-88, 490, 124 L. Ed. 2d at 446-47, 448, 113 S. Ct. at 2200-01, 2202.

The *Mitchell* Court held that, unlike the ordinance in *R.A.V.*, the Wisconsin statute was aimed solely at conduct unprotected by the first amendment. *Mitchell*, 508 U.S. at 484, 124 L. Ed. 2d at 444-45, 113 S. Ct. at 2199. The Court noted that, although a defendant may not be

punished for his or her abstract beliefs, motive has traditionally been used as a factor in sentencing. *Mitchell*, 508 U.S. at 485, 124 L. Ed. 2d at 445, 113 S. Ct. at 2199. The Court also observed that, although the statute punished the defendant for his discriminatory motive, motive played the same role in federal and state antidiscrimination statutes that had withstood first amendment challenges. *Mitchell*, 508 U.S. at 487, 124 L. Ed. 2d at 446, 113 S. Ct. at 2200. The Court further held that a state legislature could reasonably conclude that bias-motivated crimes cause greater societal harm warranting stiffer penalties because such offenses are more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest. *Mitchell*, 508 U.S. at 487-88, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. Consequently, the Court found that the Wisconsin statute did not infringe upon free speech rights. *Mitchell*, 508 U.S. at 490, 124 L. Ed. 2d at 448, 113 S. Ct. at 2202.

In *In re Vladimir P.*, 283 Ill. App. 3d 1068 (1996), the Appellate Court, First District, addressed a similar challenge to the Illinois hate crime statute when predicated on aggravated assault. The *Vladimir P.* court held that *Mitchell* was controlling and upheld the Illinois hate crime statute. The court held that, although the statute in *Mitchell* was a penalty enhancement provision while the Illinois statute created a separate crime, the distinction did not change the underlying analysis. *Vladimir P.*, 283 Ill. App. 3d at 1073. The court also held that article I of the Illinois Constitution of 1970 provided no greater protection in this area than the first amendment. See *Vladimir P.*, 283 Ill. App. 3d at 1072-73. Ultimately, the court concluded that the hate crime statute does not infringe on a defendant's right of free speech because the statute does not punish an offender for merely thinking hateful thoughts or expressing bigoted beliefs but only punishes an offender who allows those beliefs to motivate his or her criminal conduct. *Vladimir P.*, 283 Ill. App. 3d at 1073.

In *Nitz*, 285 Ill. App. 3d 364, the Appellate Court, Third District, followed *Mitchell* and *Vladimir P.* and rejected the defendant's argument that predicating a hate crime on disorderly conduct can result in punishment based solely on speech. *Nitz*, 285 Ill. App. 3d at 369. We note that in *In re B.C.*, 176 Ill. 2d 536 (1997), our supreme court was asked to interpret the hate crime statute. See *B.C.*, 176 Ill. 2d at 542. However, because of the posture of the case, the supreme court did not address the constitutionality of the statute and made no ruling on that point. *B.C.*, 176 Ill. 2d at 553.

Defendant acknowledges that these precedents seem to have settled the issue of whether the hate crime statute infringes upon free speech. However, he argues that we are not bound by the decisions of

the first and third districts and urges us not to follow *Vladimir P.* and *Nitz*. Defendant argues that the *Nitz* court failed to recognize some of the practical consequences of predicating hate crime on disorderly conduct. Defendant argues, without citation to authority, that the conduct necessary to support a charge of disorderly conduct is judged on a sliding scale and is inversely proportional to the offensiveness of the speech. After positing this sliding scale, defendant concludes that conduct that would otherwise go unpunished will be treated as disorderly conduct and enhanced to hate crime if the accused expresses certain unpopular beliefs. We decline to follow defendant down this slippery slope.

■ The overbreadth doctrine protects the freedom of speech guaranteed by the first amendment by invalidating laws so broadly written that the fear of prosecution would discourage people from exercising that freedom. *People v. Anderson*, 148 Ill. 2d 15, 26 (1992). A law regulating conduct is facially overly broad if it (1) criminalizes a substantial amount of protected behavior, relative to the law's plainly legitimate sweep, and (2) is not susceptible to a limiting construction that avoids constitutional problems. *City of Harvard v. Gaut*, 277 Ill. App. 3d 1, 6 (1996). A statute should not be invalidated for being overly broad unless its overbreadth is both real and substantial. *Anderson*, 148 Ill. 2d at 26; *Woodstock Hunt Club v. Hindi*, 291 Ill. App. 3d 1051, 1054 (1997).

■ Defendant's argument ignores the long-standing principle that speech alone cannot form the basis for a disorderly conduct charge. See *People v. Raby*, 40 Ill. 2d 392, 397 (1968); *Nitz*, 285 Ill. App. 3d at 369. The *Raby* court observed that "[u]nder no circumstances would the statute 'allow persons to be punished merely for peacefully expressing unpopular views.' " *Raby*, 40 Ill. 2d at 397. It remains no crime to express an unpopular view even if the person expressing those views draws attention to herself or himself or annoys others nearby. See *People v. Bradshaw*, 116 Ill. App. 3d 421, 422 (1983). As the *Bradshaw* court observed:

> " 'Vulgar language, however distasteful or offensive to one's sensibilities, does not evolve into a crime because people standing nearby stop, look, and listen. The State's concern becomes dominant only when a breach of the peace is provoked by the language.' " *Bradshaw*, 116 Ill. App. 3d at 422, quoting *People v. Douglas*, 29 Ill. App. 3d 738, 742-43 (1975).

Consequently, the hate crime statute does not reach those who, in defendant's words, simply "express themselves loudly and in a highly-animated, passionate manner" but applies only when their conduct is unreasonable and provokes a breach of the peace.

■ In this case, defendant is not being punished merely because he holds an unpopular view on homosexuality or because he expressed those views loudly or in a passionate manner. Defendant was charged with hate crime because he allowed those beliefs to motivate unreasonable conduct. Defendant remains free to believe what he will regarding people who are homosexual, but he may not force his opinions on others by shouting, pounding on a counter, and disrupting a lawful business. Defendant's conduct exceeded the bounds of spirited debate, and the first amendment does not give him the right to harass or terrorize anyone. Therefore, because the hate crime statute requires conduct beyond mere expression, we follow *Nitz* and conclude that, within the limits set by *Mitchell* and *R.A.V.*, the Illinois hate crime statute constitutionally regulates conduct without infringing upon free speech.

## 2. Content Discrimination

Defendant cites *R.A.V.* and argues that the hate crime statute is constitutionally impermissible because it discriminates based on the content of an offender's beliefs. Defendant argues that the statute enhances disorderly conduct to hate crime when the conduct is motivated by, *e.g.*, an offender's views on race or sexual orientation but that it treats identical conduct differently if motivated, *e.g.*, by an offender's beliefs regarding abortion or animal rights. See *R.A.V.*, 505 U.S. at 391, 120 L. Ed. 2d at 323, 112 S. Ct. at 2547-48. The *R.A.V.* Court invalidated the St. Paul ordinance because it favored some political views over others. The Court stated as follows:

"[T]he ordinance applies only to 'fighting words' that insult, or provoke violence, 'on the basis of race, color, creed, religion or gender.' Displays containing abusive invective, no matter how vicious or severe, are permissible unless they are addressed to one of the specified disfavored topics. Those who wish to use 'fighting words' in connection with other ideas—to express hostility, for example, on the basis of political affiliation, union membership, or homosexuality—are not covered." *R.A.V.*, 505 U.S. at 391, 120 L. Ed. 2d at 323, 112 S. Ct. at 2547.

However, the portions of *R.A.V.* upon which defendant relies do not affect our analysis.

In *R.A.V.*, the Court recognized several limitations to its content discrimination analysis, including statutes directed at conduct rather than speech, which sweep up a particular subset of proscribable speech. *R.A.V.*, 505 U.S. at 389, 120 L. Ed. 2d at 321-22, 112 S. Ct. at 2546. The Court noted, for example, that certain sexually derogatory words may violate general prohibitions against sexual discrimination. *R.A.V.*, 505 U.S. at 389-90, 120 L. Ed. 2d at 322, 112 S. Ct. at 2546-47.

One year later, the *Mitchell* Court further examined this exception. The State of Minnesota argued that "bias-motivated crimes are more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest." *Mitchell,* 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. The *Mitchell* Court held that the State could act to redress the harm it perceived as associated with bias-motivated crimes by punishing bias-motivated offenses more severely. *Mitchell,* 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. In *Vladimir P.,* the reviewing court held that the *Mitchell* decision disposed of the respondent's similar constitutional arguments challenging the Illinois statute. *Vladimir P.,* 283 Ill. App. 3d at 1073. We too decide that the legislature was free to determine as a matter of sound public policy that bias-motivated crimes create greater harm than identical conduct not motivated by bias and should be punished more harshly. Consequently, we reject defendant's content discrimination argument. See *Mitchell,* 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201; *Vladimir P.,* 283 Ill. App. 3d at 1073.

### 3. Chilling Effect

Defendant also argues that the hate crime statute chills free expression because individuals will be deterred from expressing unpopular views out of fear that such expression will later be used to justify a hate crime charge. We disagree. The overbreadth doctrine should be used sparingly and only when the constitutional infirmity is both real and substantial. See *Woodstock Hunt Club,* 291 Ill. App. 3d at 1054. The *Mitchell* Court rejected identical arguments and held that any possible chilling effects were too speculative to support an overbreadth claim. *Mitchell,* 508 U.S. at 489, 124 L. Ed. 2d at 447-48, 113 S. Ct. at 2201. The first amendment does not prohibit the evidentiary use of speech to establish motive or intent. *Mitchell,* 508 U.S. at 489, 124 L. Ed. 2d at 448, 124 S. Ct. at 2201; *Vladimir P.,* 283 Ill. App. 3d at 1074. Similarly, we find defendant's argument speculative, and we cannot conclude that individuals will refrain from expressing controversial beliefs simply because they fear that their statements might be used as evidence of motive if they later commit an offense identified in the hate crime statute. See *Mitchell,* 508 U.S. at 489, 124 L. Ed. 2d at 447-48, 124 S. Ct. at 2201.

### CONCLUSION

We hold that the hate crime statute is not facially unconstitutional when the predicate offense is disorderly conduct because (1) the statute reaches only conduct and does not punish speech itself; (2) the statute does not impermissibly discriminate based on content; and (3) the statute does not chill the exercise of first amendment rights. De-

fendant contends only that the statute is unconstitutional and does not challenge the sufficiency of the evidence against him or assert any other basis for reversal. Accordingly, we affirm defendant's conviction. The judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN, P.J., and INGLIS, J., concur.