In the Matter of the
**WELFARE OF R.A.V.**

No. C8–90–1656.

Supreme Court of Minnesota.

Jan. 18, 1991.

Steven C. DeCoster, Asst. County Atty., St. Paul, for appellant.

Edward J. Cleary, St. Paul, for respondent.

Steven W. Zachary, St. Paul, for NAACP, amicus curiae.

Mark S. Weitz, Timothy R. Meyerson, Lawrence P. Schaefer, Leonard, Street and Deinard, Minneapolis, Jeffrey D. Sineusky, Stephen M. Freeman, Michael A. Sandberg, New York City, amicus curiae, for Anti-Defamation League of B'Nai B'Rith.

Robert J. Alfton, City Atty., and Mitchell Lewis Rothman, Deputy City Atty., Minneapolis, amicus curiae, for City of Minneapolis.

TOMLJANOVICH, Justice.

The City of St. Paul alleges that between 1:00 a.m. and 3:00 a.m. on June 21, 1990, R.A.V. participated in burning a cross inside the fenced yard of an African American family's home. In connection with this incident, the City charged R.A.V. with violating St. Paul, Minn.Leg.Code § 292.02 (1990), which provides that

> [w]hoever places on public or private property a symbol, object, appellation, characterization or graffiti, including but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm, or resentment in others on the basis of race, color, creed, religion, or gender commits disorderly conduct and shall be guilty of a misdemeanor.

*Id.* The trial court, however, dismissed the charge prior to trial on the ground that the ordinance censors expressive conduct in violation of the first amendment to the United States Constitution. The City now appeals that decision, contending that the ordinance can be narrowly construed to reach only conduct that falls outside first amendment protection. In order to prevail, the City must demonstrate "clearly and unequivocally, first, that the trial court erred in its judgment and, second, that unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Joon Kyu Kim,* 398 N.W.2d 544, 547 (Minn.1987) (citing *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977)).

Burning a cross in the yard of an African American family's home is deplorable conduct that the City of St. Paul may without question prohibit. The burning cross is itself an unmistakable symbol of violence and hatred based on virulent notions of racial supremacy.[1] It is the responsibility, even the obligation, of diverse communities to confront such notions in whatever form they appear.

R.A.V. does not dispute that the City may prosecute individuals who engage in such actions as he is alleged to have perpetrated. Rather, he challenges the particular ordinance under which he was charged

---

1. *See* Mari Matsuda, *Public Response to Racist Speech: Considering the Victim's Story,* 87 Mich. L.Rev. 2320, 2365–66 (1989):

There are certain symbols and regalia that in the context of history carry a clear message of racial supremacy, hatred, persecution, and degradation of certain groups. The swastika, the Klan robes, the burning cross are examples of signs—like all signs—that have no meaning on their own, but that convey a powerful message to both the user and the recipient of the sign in context.

*Id.* (footnotes omitted).

on the ground that it is substantially overbroad. In essence, R.A.V. contends that the St. Paul bias-motivated disorderly conduct ordinance potentially censors so many constitutionally protected activities on its face that it must be completely invalidated. We disagree.

■ The overbreadth doctrine, an exception to standing requirements peculiar to disputes regarding the extent to which the first amendment protects speech and other expressive conduct, permits an individual to facially challenge a provision even though that individual engaged in conduct that is itself subject to prosecution. *See State v. Krawsky,* 426 N.W.2d 875, 876 (Minn.1988); *see also New York v. Ferber,* 458 U.S. 747, 768–69, 102 S.Ct. 3348, 3360–61, 73 L.Ed.2d 1113 (1982). This exception to the general rules of standing is intended to overcome the "danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); *see also Dombroski v. Pfister,* 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). Thus,

> an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.

*Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985). If the challenged provision is substantially overbroad, "the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation." *Id.* at 503–04, 105 S.Ct. at 2801–02 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

■ While the overbreadth doctrine is clearly essential to the protection of free expression, the complete invalidation of legislatively adopted laws it permits is "strong medicine" that this court does not hastily prescribe. *See Broadrick v. Oklahoma,* 413 U.S. at 613, 93 S.Ct. at 2916. Where the overbreadth of the challenged law is both "real" and "substantial," *see New York v. Ferber,* 458 U.S. at 770, 102 S.Ct. at 3361, and where "the words of the [law] simply leave no room for a narrowing construction," *Board of Airport Commissioners v. Jews for Jesus, Inc.,* 482 U.S. 569, 575, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987), "so that in all its applications the [law] creates an unnecessary risk of chilling free speech," *Secretary of State of Md. v. Joseph H. Munson Co.* 467 U.S. 947, 968, 104 S.Ct. 2839, 2853, 81 L.Ed.2d 786 (1984), this court will completely invalidate it. When possible, however, this court narrowly construes a law subject to facial overbreadth attack so as to limit its scope to conduct that falls outside first amendment protection while clearly prohibiting its application to constitutionally protected expression. *See In re S.L.J.,* 263 N.W.2d 412, 419 (Minn.1978) (disorderly conduct statute limited to "fighting words" to preserve constitutionality); *New York v. Ferber,* 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24 ("If the invalid reach of the law is cured [by narrow judicial construction], there is no longer reason for proscribing the statute's application to unprotected conduct." *Id.*); *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1973) (invalidating state statute where state supreme court did not narrow construction on previous remand). We conclude that the ordinance in question can be narrowly interpreted to reach only unprotected conduct, thereby sufficiently decreasing the possibility that those who wish to engage in protected expressive conduct will be dissuaded from doing so by the potential of prosecution and sparing that ordinance from the complete invalidation R.A.V. requests.

Although the United States Supreme Court's recent decision in *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105

L.Ed.2d 342 (1989) did not directly address an overbreadth challenge,[2] that decision is instructive as to the scope of constitutionally protected expressive conduct. In *Johnson,* the Court held that Texas could not prosecute an individual for burning a United States flag outside Dallas City Hall under the state's "desecration of venerated objects" statute. *See id.* 109 S.Ct. at 2548. The Court noted that the state had *not* alleged that Johnson's conduct actually disturbed the peace or that it threatened to immediately do so. *Id.* at 2541, 2548. Rather, the state contended that *every* flag burning necessarily possessed the potential to disrupt public safety and order, which empowered it to censor all such conduct. *Id.* at 2542. In rejecting this argument, the Court stated that the first amendment does not permit "the Government to *assume* that *every* expression of a provocative idea will incite a riot, but [instead requires] careful consideration of the *actual circumstances* surrounding such expression." *Id.* (emphasis added). Although in prosecuting Johnson, the state made such an impermissible assumption, the Court clearly indicated that its decision reversing Johnson's conviction did not alter or undermine the states' authority to prohibit expressive conduct likely to provoke imminent lawless action, *id.* (citing *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969)), or constituting "fighting words," *id.* (citing *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942))— "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769.

Unlike the flag desecration statute at issue in *Texas v. Johnson,* the challenged St. Paul ordinance does not on its face assume that any cross burning, irrespective of the particular context in which it occurs, is subject to prosecution. Rather, the ordinance censors only those displays that one knows or should know will create anger, alarm or resentment based on racial, ethnic, gender or religious bias. In *In re S.L.J.,* 263 N.W.2d 412 (Minn.1978), this court narrowly construed Minn.Stat. § 609.72, subd. 1(3) (1990), which prohibits "offensive, obscene, or abusive language or * * * boisterous and noisy conduct tending reasonably to arouse *alarm, anger, or resentment in others,*" (emphasis added) to refer only to "fighting words," *S.L.J.,* 263 N.W.2d at 419, thereby preserving it in the face of an overbreadth attack. · Similarly limited to expressive conduct that amounts to "fighting words"—conduct that itself inflicts injury or tends to incite immediate violence, *see Chaplinsky v. New Hampshire,* 315 U.S. at 572, 62 S.Ct. at 769—the ordinance in question withstands constitutional challenge.

St. Paul's bias-motivated disorderly conduct ordinance is also constitutional to the extent it prohibits conduct that is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio,* 395 U.S. at 447, 89 S.Ct. at 1829 (footnote omitted). Where the "anger, alarm or resentment" the ordinance speaks of rises to the level of "imminent lawless action," *id.* at 449, 89 S.Ct. at 1830, the City is permitted to intervene and censor the provocative conduct. *See Texas v. Johnson,* 109 S.Ct. at 2542. Because the City's disorderly conduct ordinance is reasonably subject to an interpretation limiting its scope to such conduct as *Brandenburg* places outside first amendment protection, we conclude that it is not substantially overbroad.[3]

**2.** The Court avoided Johnson's claim that the statute was substantially overbroad by concluding that his particular conduct—burning a flag without threatening public safety or order—was itself protected expression and that his conviction was thus unconstitutional. *See Texas v. Johnson,* 109 S.Ct. at 2538 n. 3.

**3.** The St. Paul ordinance is significantly different from the provision the United States Supreme Court invalidated in *Board of Airport*

*Commissioners v. Jews for Jesus, Inc.,* 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). That provision banned all "First Amendment activities" from the central terminal area of Los Angeles International Airport. *Id.* at 571, 107 S.Ct. at 2570. The Court concluded the provision could not be preserved because its language "simply [left] no room for a narrowing construction." *Id.* at 575, 107 S.Ct. at 2572. *See also Secretary of State of Md. v. Joseph H. Mun-*

In upholding the challenged ordinance against R.A.V.'s constitutional attack, we do not take lightly the first amendment issues that his attack raises. "If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 109 S.Ct. at 2544. "Resort to epithets or personal abuse," however, "is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act [raises] no question under that instrument." *Cantwell v. Connecticut,* 310 U.S. 296, 309–10, 60 S.Ct. 900, 905–06, 84 L.Ed. 1213 (1940). Although the St. Paul ordinance should have been more carefully drafted, it can be interpreted so as to reach only those expressions of hatred and resorts to bias-motivated personal abuse that the first amendment does not protect. So interpreted, the ordinance is a narrowly tailored means toward accomplishing the compelling governmental interest in protecting the community against bias-motivated threats to public safety and order, *see Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980), and therefore is not prohibited by the first amendment.

·We therefore reverse the trial court's pretrial order declaring the City of St. Paul's bias-motivated disorderly conduct ordinance unconstitutional. Count two of the amended juvenile petition charging R.A.V. with violating that ordinance is reinstated and the case is remanded for trial.

GARDEBRING, J., took no part.

---

*son Co.,* 467 U.S. at 965–67, 104 S.Ct. at 2851–53 (statute limiting expenses of all charitable fund raising operations not subject to limiting construction); *cf. CSC v. Letter Carriers,* 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2897–98, 37 L.Ed.2d 796 (1973) (invalidation improper where statute "covers a whole range of easily identifiable and constitutionally proscribable * * * conduct").