*Lipp v. State*, No. 181, September Term, 2019, Opinion by Graeff, J.

**CRIMINAL LAW – HATE CRIMES – DEFACEMENT OF PROPERTY**

Md. Code (2012 Repl. Vol., Supp. 2019) § 10-305 of the Criminal Law Article ("CR") prohibits the defacement, damage, or destruction of property when "there is evidence that exhibits animosity against a person or group, because of the race, color, religious beliefs, sexual orientation, gender, disability, or national origin of that person or group[.]" Appellant challenged his conviction under CR § 10-305 on the grounds that it violated his First Amendment right to freedom of speech. The plain language of the statute, however, makes clear that a conviction may not be based solely on speech. Rather, the statute permissibly regulates harmful conduct, not the content of the speech. Accordingly, CR § 10-305 does not violate the First Amendment right to freedom of speech.

Appellant may have had a First Amendment right to spray paint on his own property the offensive words and symbols used here. Once he combined that action with a criminal act, however, in this case defacing property of another, his criminal activity was not protected by the First Amendment.

Circuit Court for Howard County
Case No. C-13-CR-18-000211

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 181

September Term, 2019

_____

MATTHEW J. LIPP

v.

STATE OF MARYLAND

_____

Graeff,
Nazarian,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: April 30, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Matthew Lipp, appellant, was convicted in the Circuit Court for Howard County of defacing property where there is evidence exhibiting animosity against groups because of race, color, religious beliefs, or sexual orientation, in violation of Md. Code (2012 Repl. Vol.), § 10-305 of the Criminal Law Article ("CR"). Appellant contends that the circuit court erred in denying his motion to dismiss, arguing that CR § 10-305 is unconstitutional because it violates the First Amendment right of freedom of speech.

For the reasons set forth below, we disagree, and therefore, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

At approximately 11:30 p.m. on May 23, 2018, appellant and three other individuals went to Glenelg High School and spray-painted graffiti on the school building, sidewalks, and trash receptacles. The graffiti included swastikas, anti-LGBTQ phrases, and other offensive writings, including "KKK," "n****rs," and "fuck jews." In addition, there was graffiti on a sidewalk that stated: "Burton is a n****r," referring to the school principal, who is African-American. The suspects subsequently were identified as four students attending the school, including 18-year-old appellant. The students ultimately confessed to the incident.

On July 12, 2018, appellant was indicted on seven criminal charges: two counts of defacing real and personal property where there is evidence exhibiting animosity against groups because of their race, color, religious beliefs, or sexual orientation in violation of

---

[1] The transcript of the plea proceeding was not included in the record. Accordingly, the facts, which are not in dispute, are taken from the parties' briefs.

CR § 10-305(2); one count of conspiracy to commit a violation of CR § 10-305(2); one count of malicious destruction of property over $1,000; one count of conspiracy to commit malicious destruction of property over $1,000; one count of school trespass and damage; and one count of conspiracy to commit school trespass and damage.

On December 3, 2018, appellant filed a motion to dismiss the charges involving CR § 10-305(2), which provides that

> [a] person may not deface, damage, or destroy . . . the real or personal property connected to a building that is publicly or privately owned, leased, or used, including a . . . school . . . if there is evidence that exhibits animosity against a person or group, because of the race, color, religious beliefs, sexual orientation, gender, disability, or national origin of that person or group or because that person or group is homeless.

He argued that the statute violated the First Amendment because it impermissibly regulated protected speech, similar to the city ordinance struck down by the United States Supreme Court in *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992).

On December 18, 2018, the circuit court held a hearing on appellant's motion to dismiss.[2] Appellant's attorney argued that, pursuant to CR § 10-305, it was permissible to use graffiti and refer to someone as a thief, but if that person used an offensive epithet, that would be illegal. Therefore, counsel asserted that CR § 10-305 regulated content-based speech and was unconstitutional under *R.A.V.* Counsel distinguished *Wisconsin v. Mitchell*, 508 U.S. 476 (1993), noting that the Wisconsin statute provided for enhanced

---

[2] An attorney for one of the other defendants charged in the incident also appeared at the motions hearing, but the cases were not otherwise consolidated.

2

penalties for a person who committed a violent crime with a particular motive, whereas CR § 10-305 criminalizes specific speech.

The State argued that the court should deny the motion to dismiss, asserting that CR § 10-305 targets conduct, not speech. It asserted that the statute "takes what is already criminal conduct," i.e., defacement of property, and "merely adds a sentence enhancement." As a result, the State argued that *Mitchell* is "directly on point to Maryland's hate-crime statute." The State also argued that it made no difference that CR § 10-305 is a separate criminal penalty, as opposed to a sentencing enhancement accompanying an existing criminal statute, stating that the General Assembly is permitted to establish penalties by either method.

At the conclusion of the hearing, the court denied appellant's motion to dismiss. It explained:

> I find that pursuant to the Supreme Court's holding in *Wisconsin v. Mitchell*, 508-US-476, that the First Amendment does not protect biased-motivated speech when it is coupled with non-verbal conduct otherwise proscribed. In this particular case, malicious destruction of property, trespass on the school grounds, damaging school property.

The court found "that the Maryland hate-crime statute is essentially a sentence enhancement statute," and it is constitutional under *Mitchell* and "Maryland's *Ayers* case."

On February 6, 2019, appellant was convicted of one count of violating CR § 10-305(2).[3] The State nolle prossed the other charges. The court then sentenced appellant to

---

[3] The State asserts in its brief that appellant was found guilty after entering a plea of not guilty pursuant to an agreed statement of facts. Appellant, in contrast, states that he "entered into a conditional guilty plea to one count preserving his right to appeal." As

3

three years' incarceration, all but 48 days suspended, to be served over 15 consecutive weekends, with supervised probation for three years, 250 hours of community service, and fines and court costs.[4]

This appeal followed.

## STANDARD OF REVIEW

"[T]he standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct." *Howard v. Crumlin*, 239 Md. App. 515, 521 (2018) (quoting *Blackstone v. Sharma*, 461 Md. 87, 110 (2018)), *cert. denied*, 463 Md. 153 (2019). Therefore, we review the dismissal of a motion to dismiss *de novo*. *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 350 (2019).

## DISCUSSION

Appellant argues on appeal that the trial court erred in denying his motion to dismiss, asserting that CR § 10-305 is unconstitutional because it "penalizes a viewpoint," and therefore, it violates the First Amendment right to freedom of speech. He contends

---

indicated, the transcript of the plea proceeding was not included in the record, but regardless of the procedural posture, there is no dispute that appellant was convicted as stated.

[4] On May 9, 2019, appellant filed a Motion for Modification requesting that the matter be held *sub curia* pending a requested hearing to reconsider the guilty finding and grant a probation before judgment. On May 13, 2019, the circuit court issued an order stating: "ORDERED, that Defendant's Motion for Modification of Sentence is held sub curia and shall be set for a hearing upon Defendant's request." No further action has been taken in this regard.

that "nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses."[5]

The State contends that the circuit court properly denied appellant's motion to dismiss because CR § 10-305 is constitutional. It asserts that, pursuant to "Supreme Court precedent, states may not punish pure expression, but they may [punish] criminal conduct that is motivated by bias." It argues that CR § 10-305 does not violate the First Amendment because it targets conduct, not speech.

## I.

### Free Speech Rights and Hate Crime Statutes

The First Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits Congress from making any law "abridging the freedom of speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003). Content-based regulation of speech is presumptively invalid under the First Amendment. *R.A.V.*, 505 U.S. at 382. And the First Amendment "affords protection to symbolic or expressive conduct as well as to actual speech." *Black*, 538 U.S. at 358. *See Spence v. Washington*, 418 U.S. 405, 409 (1974) (Flag-burning as a form of protest is protected speech under the First Amendment.).

The right to freedom of speech, however, is "not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942); *Black*, 538 U.S. at 359. "The First Amendment permits 'restrictions upon the content of speech in a few

---

[5] Appellant bases his argument solely on the First Amendment. He makes no claim based on Article 40 of the Maryland Declaration of Rights.

limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."'" *Black*, 538 U.S. at 359–60 (quoting *R.A.V.*, 505 U.S. at 382–83). Examples include obscenity, defamation, and "'fighting words,' *i.e.*, 'conduct that itself inflicts injury or tends to incite immediate violence.'" *R.A.V.*, 505 U.S. at 380 (quoting *In re Welfare of R.A.V.*, 464 N.W.2d 507, 510 (Minn. 1991)). "[T]he First Amendment also permits a State to ban a 'true threat,'" i.e., a statement meant to "communicate a serious expression of an intent to commit an act of unlawful violence to a particular" person. *Black*, 538 U.S. at 359.

In assessing the constitutionality of CR § 10-305, the parties rely extensively on *R.A.V* and *Mitchell*. In these cases, "the Supreme Court staked out the boundary between a state's unconstitutional regulation of unpopular beliefs in the marketplace of ideas and the permissible regulation of conduct motivated by those beliefs." *People v. Rokicki*, 718 N.E.2d 333, 336–37 (Ill. App. Ct. 1999). We begin our analysis with a discussion of these cases.

## A.

### *R.A.V.* and *Mitchell*

In *R.A.V.*, 505 U.S. at 379, a juvenile and several other teenagers burned a cross on the yard of an African-American family. The defendant was convicted under St. Paul's hate crime ordinance, which provided:

> Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses

6

anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.

*Id.* at 380 (quoting St. Paul, Minn., Legis. Code § 292.02 (1990)).

The Minnesota Supreme Court held that the ordinance did not violate the First Amendment. *Id.* It found that the modifying phrase "arouses anger, alarm or resentment in others" limited the ordinance to "fighting words," and therefore, it reached only expression "that the first amendment does not protect[.]" *Id.* at 380–81 (quoting *In re Welfare of R.A.V.*, 464 N.W.2d at 510).

The Supreme Court reversed, holding that, even if "all of the expression reached was proscribable under the 'fighting words' doctrine," the ordinance was facially unconstitutional because it was a content-based and viewpoint-based regulation of speech. *Id.* at 381, 391. The Court noted that the ordinance was not a prohibition "of fighting words that are directed at certain persons or groups (which would be *facially* valid if it met the requirements of the Equal Protection Clause)," but rather, the ordinance prohibited only fighting words containing "messages of 'bias-motivated' hatred and in particular, as applied to this case, messages 'based on virulent notions of racial supremacy.'" *Id.* at 392 (quoting *R.A.V.*, 464 N.W.2d at 508, 511).

The Court explained:

[T]he only interest distinctively served by the content limitation is that of displaying the city council's special hostility towards the particular biases thus singled out. That is precisely what the First Amendment forbids. The politicians of St. Paul are entitled to express that hostility—but not through the means of imposing unique limitations upon speakers who (however benightedly) disagree.

*Id.* at 396 (footnote omitted).

7

One year later, in *Mitchell*, the Supreme Court addressed a First Amendment challenge to a Wisconsin statute that provided for an enhanced sentence if the defendant committed a crime and intentionally selected the person against whom the crime was committed or the property which was damaged "because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person or the owner or occupant of that property." 508 U.S. at 479, 480 n.1 (quoting Wis. Stat. § 939.645 (1989)). In that case, a group of African-American men and boys severely beat a young white boy based on his race. *Id.* at 479–80. Mitchell was convicted of aggravated battery. *Id.* at 480. This offense ordinarily had a maximum sentence of two years, but because Mitchell intentionally selected his victim because of the victim's race, he received an enhanced sentence pursuant to § 939.645. *Id.*

The Supreme Court rejected Mitchell's argument that, because the statute enhanced the maximum penalty for conduct motivated by a discriminatory motive or point of view, the statute violated the First Amendment by punishing the offender's bigoted beliefs. *Id.* at 485, 490. It found no constitutional violation because the statute was "aimed at conduct unprotected by the First Amendment." *Id.* at 487–88, 490. The Court noted that "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." *Id.* at 484. Nor are "other types of potentially expressive activities that produce special harms distinct from their communicative impact" entitled to constitutional protection. *Id.* (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984)).

In reaching its conclusion that the enhanced punishment based on a defendant's discriminatory motive for acting did not render the statute unconstitutional, the Court noted

8

that motive for committing an offense has long been an acceptable consideration during sentencing. *Id.* at 485. Although "a defendant's abstract belief, however obnoxious to most people, may not be taken into consideration by a sentencing judge[,]" the "Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.* at 485–86 (quoting *Dawson v. Delaware*, 503 U.S. 159, 165 (1992)). Moreover, the Court noted that "motive plays the same role under the Wisconsin statute as it does under federal and state antidiscrimination laws," which prevents discrimination based on an employee's race, religion, sex, or national origin, and which the Court had upheld as a "permissible content-neutral regulation of conduct." *Id.* at 487.

The Court then addressed the distinction between the Wisconsin statute and the ordinance involved in *R.A.V.*:

> That case involved a First Amendment challenge to a municipal ordinance prohibiting the use of "'fighting words' that insult, or provoke violence, 'on the basis of race, color, creed, religion or gender.'" [*R.A.V.*,] 505 U.S., at 391, 112 S. Ct., at 2547 (quoting St. Paul Bias–Motivated Crime Ordinance, St. Paul, Minn., Legis. Code § 292.02 (1990)). Because the ordinance only proscribed a class of "fighting words" deemed particularly offensive by the city—*i.e.*, those "that contain . . . messages of 'bias-motivated' hatred," 505 U.S., at 392, 112 S. Ct., at 2547[,] we held that it violated the rule against content-based discrimination. *See id.*, at 392–394, 112 S. Ct., at 2547–2548. But whereas the ordinance struck down in *R.A.V.* was explicitly directed at expression (*i.e.*, "speech" or "messages"), *id.*, at 392, 112 S. Ct., at 2547, the statute in this case is aimed at conduct unprotected by the First Amendment.

*Id.* at 487.

9

The Court noted that the "Wisconsin statute singles out for enhancement bias-inspired conduct because this conduct is thought to inflict greater individual and societal harm[,]" i.e., it was believed to be "more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest." *Id.* at 487–88. "The State's desire to redress these perceived harms provides an adequate explanation for its penalty-enhancement provision over and above mere disagreement with offenders' beliefs or biases." *Id.* at 488. Accordingly, the Court held that application of the Wisconsin penalty-enhancement statute did not violate Mitchell's First Amendment rights. *Id.* at 490.

**B.**

**Other Jurisdictions**

Although the Maryland appellate courts have not explicitly addressed the constitutionality of CR § 10-305, other state and federal jurisdictions have addressed their hate crime statutes using the constitutional framework established in *R.A.V.* and *Mitchell*.[6] These are instructive to our analysis of CR § 10-305.

---

[6] A hate crime is defined as "[a] felony or misdemeanor motivated by the perpetrator's prejudice, [usually] an intense bigotry, on the basis of the victim's race, color, national origin, ancestry, gender, religion, religious practice, age, disability, or sexual orientation." *Blacks Law Dictionary* (11th ed. 2019). According to the Federal Bureau of Investigation hate crime statistics, there were 7,120 hate crime incidents reported in 2018 throughout the country. Federal Bureau of Investigation, Uniform Crime Reporting, *2018 Hate Crime Statistics*, *Table 1* (2018) https://ucr.fbi.gov/hate-crime/2018/topic-pages/incidents-and-offenses, available at https://perma.cc/PXY6-U56W (last visited March 27, 2020). Today, almost every state, except for Arkansas, Georgia, South Carolina, and Wyoming, prohibits the commission of hate crimes in some form. United States Department of Justice*, Hate Crimes, Laws and Policies*, https://www.justice.gov/hatecrimes/laws-and-policies, available at https://perma.cc/U47C-34P7 (last visited March 27, 2020).

10

In *State v. McKnight*, 511 N.W.2d 389, 390 (Iowa), *cert. denied*, 511 U.S. 1113 (1994), the Supreme Court of Iowa addressed the constitutionality of an Iowa hate crime statute in the context of an assault motivated by racism. McKnight was convicted of infringement of individual rights pursuant to the following statute:

> A person who maliciously and intentionally intimidates or interferes with another person because of that person's race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, or disability and while doing so commits any of the following acts, is guilty of an aggravated misdemeanor:
>
> a. Commits an assault, as defined in section 708.1, upon that person or a third person.
>
> b. Commits an act of criminal mischief, as defined in section 716.1, upon that person or a third person.

*Id.* at 390–91 (quoting Iowa Code § 729.5(3) (1991)).

Noting the striking resemblance of the Iowa statute to the Wisconsin statute upheld in *Mitchell*, the court held that the law was constitutional because "bias motivated speech, coupled with assaultive or other nonverbal, proscribed conduct, is not protected by the First Amendment." *Id.* at 395–96. It explained:

> Had McKnight limited his attack on [the victim] to mere words, the First Amendment would have protected his right to do so. He lost that protection when his racial bias toward blacks drove him to couple those words with assaultive conduct toward [the victim], who is black. In these circumstances, the words and the assault are inextricably intertwined for First Amendment purposes.

*Id.* at 395.

The court was not persuaded that the Iowa statute was different from the Wisconsin statute in the way they were structured. *Id.* at 396. The court explained:

11

> Both are directed at nonverbal, proscribed conduct—for example, assault—motivated by bias. Both proscribe such conduct in other criminal statutes. Both increase punishment for the proscribed conduct. In the case of section 729.5(3), the enhancement is from a misdemeanor to an aggravated misdemeanor; in the case of the Wisconsin statute, the penalties are simply increased. In each instance, the legislatures had good reason for the enhancement provisions. Because of these similarities, *Mitchell II* controls our decision. Like the Wisconsin statute, section 729.5(3) is, we hold, aimed at conduct unprotected by the First Amendment. We therefore conclude section 729.5(3) does not violate McKnight's First Amendment right of free speech.

*Id.*

Appellant argues that this case, similar to *Mitchell*, is distinguishable from his case because they involved a physical assault on a person, which did not occur here. Other courts, however, have made clear that the analysis of *Mitchell* is not limited to bias-motivated assaults. In *Rokicki*, 718 N.E.2d at 336, the defendant was convicted of a hate crime based on the predicate offense of disorderly conduct at a restaurant, where he directed epithets at the victim based on sexual orientation. Illinois' hate crime statute read as follows:

> A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, [she or] he commits assault, battery, aggravated assault, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action or disorderly conduct. . . . 720 ILCS 5/12–7.1(a) (West 1994).

*Id.* at 336.

Rokicki argued that the statue was unconstitutional because it violated his free speech rights. *Id.* After a thorough review of *R.A.V.* and *Mitchell*, the court determined that the "statute requires conduct beyond mere expression." *Id.* at 337–39. It explained:

12

> [D]efendant is not being punished merely because he holds an unpopular view on homosexuality or because he expressed those views loudly or in a passionate manner. Defendant was charged with hate crime because he allowed those beliefs to motivate unreasonable conduct. Defendant remains free to believe what he will regarding people who are homosexual, but he may not force his opinions on others by shouting, pounding on a counter, and disrupting a lawful business. Defendant's conduct exceeded the bounds of spirited debate, and the first amendment does not give him the right to harass or terrorize anyone.

*Id.* at 339. Accordingly, the court held that the statute "constitutionally regulates conduct without infringing upon free speech." *Id.*

In a California case with similar facts to those here, the defendant was convicted for a hate crime after he wrote racial slurs on the classroom door of the only African-American teacher at a school and on a music building where multiple African-American students sat in the morning after getting off the bus. *In Re Michael M*., 86 Cal. App. 4th 718, 721–22 (Cal. Ct. App. 2001). The defendant confessed to the crime and was convicted under the following statute:

> No person . . . shall knowingly deface, damage, or destroy the real or personal property of any other person for the purpose of intimidating or interfering with the free exercise or enjoyment of any right or privilege secured to the other person by the Constitution or laws of this state or by the Constitution or laws of the United States, because of the other person's race[.]

*Id.* at 722–23 (quoting Cal. Penal Code § 422.6(b) (1998)).

Michael M. argued that the court's finding that he violated the statute was overbroad because the words he wrote were not a credible threat of violence, and therefore, his actions were protected by the First Amendment. *Id.* at 727. The court upheld the statute because it was "directed at regulating conduct that is unprotected by the First Amendment." *Id.* at

13

729–30. It stated that vandalism is not protected by the First Amendment "merely because those engaged in such conduct intend thereby to express an idea." *Id.* at 729.[7]

In *State v. Nye*, 943 P.2d 96, 98–99 (Mont. 1997), the defendant was convicted of malicious intimidation or harassment relating to civil or human rights after placing bumper stickers conveying religious views around the community. The statute provided, in pertinent part, as follows:

> A person commits the offense of malicious intimidation or harassment when, because of another person's . . . religion . . . , he purposely or knowingly, with the intent to terrify, intimidate, threaten, harass, annoy, or offend . . . damages, destroys, or defaces any property of another or any public property.

*Id.* at 99 (quoting Mont. Code Ann. § 45-5-221 (1989)).

The Supreme Court of Montana rejected Nye's argument that this statute violated his First Amendment rights, stating that the purpose of the statute was "not to suppress the content of the communication," but rather, "to prohibit conduct that violates other criminal laws . . . and that are committed against another person because of that person's race, religion or national origin with the intent to intimidate, harass or annoy that person." *Id.* at 100–01. The court stated that the First Amendment protected Nye's right to put the bumper stickers on his property, but he "lost his First Amendment protection when he

---

[7] The court also addressed, based on the statutory scheme involved, whether the words written constituted a credible threat of violence. *In re Michael M.*, 86 Cal. App. 4th 718, 730 (Cal. Ct. App. 2001). Although a threat of violence is not an element of the offense under Maryland's statute, we note that the California court held that writing the word n****r on the door of the only African-American teacher "carried with it a violent connotation." *Id.*

14

coupled the message on the bumper sticker with the defacement of the property of others." *Id.* at 101.

Federal courts similarly have upheld against First Amendment challenges statutes providing enhanced punishment for criminal conduct that is motivated by bias towards a protected group. For example, in *Ward v. Utah*, 398 F.3d 1239, 1244, 1249–50 (10th Cir. 2005), the court held that a hate crime statute that "increased punishment for persons committing certain enumerated offenses, including disorderly conduct, with the intent to 'intimidate or terrorize'" was constitutional because it required "the commission of a primary, conduct-based offense prior to its application," and therefore, the statute was aimed at conduct unprotected by the First Amendment.

## II.

## CR § 10-305

With this background in mind, we address appellant's claim that CR § 10-305 is unconstitutional. This statute, one of Maryland's hate crimes statutes, provided at the time of appellant's actions:

> A person may not deface, damage, or destroy, attempt to deface, damage, or destroy, burn or attempt to burn an object on, or damage the real or personal property connected to a building that is publicly or privately owned, leased, or used, including a cemetery, library, meeting hall, recreation center, or school:
>
> (1) because a person or group of a particular race, color, religious belief, sexual orientation, gender, disability, or national origin, or because a person or group that is homeless, has contacts or is associated with the building; or
>
> (2) if there is evidence that exhibits animosity against a person or group, because of the race, color, religious beliefs, sexual orientation, gender,

disability, or national origin of that person or group or because that person or group is homeless.[8]

The plain language of the statute makes clear that a conviction may not be based solely on speech. Rather, the statute regulates harmful conduct, not the content of the speech. And the harmful conduct is proscribed in other criminal statutes. *See e.g.,* CR § 6-301 ("A person may not willfully and maliciously destroy, injure, or deface, real or personal property of another.").

The Supreme Court in *Mitchell*, 508 U.S. at 484–86, held that bias-motivated speech, coupled with non-verbal, proscribed conduct, is not protected by the First Amendment. An enhanced punishment for bias-inspired conduct is permissible because this conduct inflicts greater individual and societal harm than the same conduct absent the special animus involved with hate crimes. *Id.* at 487–88.[9]

Appellant argues that, even if CR § 10-305 is analogous to *Mitchell* because it proscribes conduct, *Mitchell* nonetheless is distinguishable. He notes that, in *Mitchell*, the statute enhanced the penalty for a crime based on the selection of the victim, whereas CR

---

[8] Effective October 1, 2019, the words "or threaten" were added to the statute. It now provides that "[a] person may not deface, damage, or destroy, attempt or threaten to deface, damage, or destroy, burn or attempt or threaten to burn an object on, or damage the real or personal property connected to a building . . . ."

[9] A conviction under CR § 10-305 is a misdemeanor with a penalty of not more than three years' incarceration and/or a $5,000 fine. The penalty for malicious destruction of property is not more than three years' incarceration and/or a $2,500 fine if the damage is more than $1,000 and 60 days and/or a fine not exceeding $500 if the damage is less than $1,000. CR § 6-301(b)&(c).

16

§ 10-305 was drafted as a separate criminal offense. Although appellant is correct that *Mitchell* is distinguishable in that regard, it is a distinction without a difference.

The Court of Appeals rejected a similar argument in *Ayers v. State*, 335 Md. 602, 629 n.6 (1994), *cert. denied*, 513 U.S. 1130 (1995).[10] In that case, Ayers brought a First Amendment challenge to the predecessor to CR § 10-305. *Id.* at 608. The Court held that, because Ayers was not convicted under the provision of the statute that he challenged, he did not have standing to challenge the statute. *Id.* at 629. The Court noted in a footnote, however, that the constitutional analysis did not change based on whether the statute creates a separate criminal offense rather than an enhancement of the penalty for the underlying offense. *Id.* at 629 n.6. The Court noted the statement in *Mitchell* that "the legislature has the primary responsibility for fixing criminal penalties. It may choose to do so by enacting a separate criminal offense statute rather than a penalty enhancement provision." *Id.* As the Court explained, "[u]nder either approach, the penalty for the underlying crime is enhanced." *Id.* We agree. The analysis in *Mitchell* applies here.

Appellant may have had a First Amendment right to spray paint on his own property the offensive words and symbols used here. Once he combined that action with a criminal act, however, in this case defacing property of another, his criminal activity was not protected by the First Amendment. The circuit court properly denied appellant's motion to dismiss.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[10] *Ayers* was abrogated on other grounds by *State v. Jones*, 466 Md. 142 (2019).