*Donald Gresham,* et al. *v. Baltimore Police Department,* et al., No. 0307, September Term, 2023. Opinion by Nazarian, J.

**JUSTICIABILITY – STANDING – GENERAL STANDING**

Standing to bring a judicial action requires the challenger to allege that they are personally and specifically aggrieved. When challenging the actions of a government official or entity, the challenger must allege an injury that is distinct from the impact the action has on the public.

**JUSTICIABILITY – POLITICAL QUESTION**

A legislature's policy judgments are unreviewable as they present political questions. However, claims that challenge the legality of the legislature's actions may be subject to judicial review.

Circuit Court for Baltimore City
Case No. 24-C-22-005368

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0307

September Term, 2023

_____

DONALD GRESHAM, *ET AL.*

v.

BALTIMORE POLICE DEPARTMENT, *ET AL.*

_____

Nazarian,
Leahy,
Wright, Alexander, Jr.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: March 27, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In 2019, the Maryland General Assembly enacted the Community Safety and Strengthening Act. The legislation authorized The Johns Hopkins University to create a campus police force. Once the law was effective, Johns Hopkins and the Baltimore Police Department signed a Memorandum of Understanding that established the future police department's responsibilities, limitations, and jurisdiction. Before this though, Donald Gresham, Joan Floyd, and Kushan Ratnayake (the "Challengers") filed suit in the Circuit Court for Baltimore City, seeking ostensibly to challenge the Memorandum. However, they dismissed the first suit voluntarily. Weeks after the dismissal, they sued again, this time seeking a declaratory judgment against Johns Hopkins and the Baltimore City Police defining the parties' respective rights and obligations under the Memorandum and, it seems, to declare the Memorandum (and the impending Johns Hopkins Police Department) "invalid, null and void." Johns Hopkins moved to dismiss the case on the grounds that (1) the Challengers lacked standing, (2) their claims weren't ripe, (3) the complaint raised nonjusticiable political questions, and (4) even if justiciable, the complaint failed to state a claim. The circuit court dismissed the case on all four grounds, the Challengers appeal, and we affirm.

## I.    BACKGROUND[1]

### A.    The Community Safety And Strengthening Act.

During its 2019 Session, the Maryland General Assembly considered Senate Bill 793, the "Community Safety and Strengthening Act" (the "Act"). The purpose of the Act was to authorize The Johns Hopkins University ("Johns Hopkins" or "JHU") to create its own police force. Eventually, the bill passed and, after the Governor signed, was codified as Maryland Code (2019, 2022 Repl. Vol.), § 24-1201 *et seq.* of the Education Article ("ED").

The Act required Johns Hopkins, as a condition of establishing and maintaining its police force, to implement standards for its police officers (under ED § 24-1203) and enter a memorandum of understanding ("MOU") with the Baltimore Police Department ("BPD"). *See* ED § 24-1202. Importantly, the Act limited the JHU Police Department's ("JHUPD") jurisdiction to an area known as the "campus area." The campus area includes, and save for transient exceptions is limited to, property owned, leased, operated or controlled by Johns Hopkins and the immediately adjacent public property:

> (c)(1) "Campus area" means any property that is:
>
>> (i) Owned, leased, operated by, or under the control of the University;
>>
>> (ii) Located on:
>>
>>> 1. The Homewood campus, meaning the area bounded by West University Parkway and East University

---

[1] In response to the appellants' motion for reconsideration, we have revised this section to reflect the sequence of events, which the initial version inverted inadvertently. The Challengers' initial suit occurred *before* the MOU's publishing and execution. Also, the initial version contained a typo: the last circuit court hearing date was held on March 20, not March 30. The motion otherwise is denied.

Parkway on the north, East 28th Street and West 28th Street on the south, Remington Avenue and Stony Run stream on the west, and North Calvert Street on the east;

2. The East Baltimore campus, meaning the area bounded by East Eager Street on the north, East Baltimore Street on the south, North Caroline Street on the west, and North Castle Street on the east; or

3. The Peabody campus, meaning the area bounded by West Madison Street and East Madison Street on the north, East Hamilton Street and West Hamilton Street on the south, Cathedral Street on the west, and Saint Paul Street on the east; and

(iii) Used for educational or institutional purposes.

(2) "Campus area" includes the public property that is immediately adjacent to the campus, including:

(i) A sidewalk, a street, or any other thoroughfare; and

(ii) A parking facility.

ED § 24-1201(c). The Act allows the JHUPD to exercise its powers beyond the campus area only if (1) the majority of individuals from nearby communities agree and (2) the Baltimore City Council approves a resolution that confirms community support. ED § 24-1202(2)(ii). To date, neither of these conditions has been met (or attempted).

**B.      The Memorandum Of Understanding.**

On September 23, 2022, the Challengers filed suit against Johns Hopkins, BPD, and the State of Maryland "seeking an injunction preventing BPD from entering into the MOU." They alleged that a charter amendment on the ballot for the November 2022 election would, if approved, transfer control over BPD from the State of Maryland to the City of Baltimore.

3

In the meantime, the MOU was published for review and comment, as required by the Act. Specifically, the parties:

> (1)     Post[ed] publicly the proposed memorandum of understanding document for 30 days on [a] website available to the public;
>
> (2)     [P]rovid[ed] the Baltimore City Council 30 days after the public posting period specified in item (1) of this subsection to review and submit written comments to the University on the proposed memorandum of understanding;
>
> (3)     [P]rovide[d] affected individuals, neighborhoods, community groups, and local officials with an opportunity to review and comment on the proposed memorandum of understanding; and
>
> (4)     [H]ost[ed] at least two public forums to present the proposed memorandum of understanding; (i) one of which [JHU] [held] on or near the Homewood and Peabody campuses; and (ii) one of which [JHU] [held] on or near the East Baltimore campus.

Subsequently, on December 2, 2022, JHU and the BPD executed the MOU. Among its provisions, the MOU restricted the JHUPD's jurisdiction to the "campus area."

Finally, the Challengers' attempts to obtain an injunction failed and they dismissed their first suit voluntarily on December 7, 2022.

**C.     Pertinent Procedural History.**

On December 30, 2022, the Challengers filed a complaint seeking a declaratory judgment stating that the MOU is "invalid, null and void" and cannot be "replaced, corrected, or 'cured'" by JHUPD and BPD after BPD becomes an agency and instrumentality of Baltimore City. They argued that the multiple issues with the MOU authorized the circuit court to "determine and adjudicate the rights, status, powers, responsibilities and liabilities of the [Challengers] and [BPD and JHU] with respect to the

4

[MOU]." One of the alleged issues includes JHU's mapping of the "campus area" which, they contended, included properties outside of its limited jurisdiction. Other alleged problems are that the MOU "assigned policing powers and responsibilities to a non-existent law enforcement agency" and that the Challengers allege a right to live in and travel to and from their homes without being subjected to "the policing powers of University officers that are unlawfully established and exercised." Finally, the Challengers asserted that because of the supposed uncertainties and inaccuracies surrounding the MOU, they had the right to know which law enforcement agency had jurisdiction over the properties near their homes. Ultimately, the complaint asked the court to declare the MOU invalid, and incurably so.

In response, JHU and BPD moved to dismiss the Challengers' complaint in February 2023. After a hearing on March 20, 2023, the circuit court dismissed the Challengers' complaint on four alternative grounds: (1) they lacked standing to challenge the MOU, (2) their complaints about the MOU weren't ripe, (3) their challenges to the MOU were nonjusticiable political questions, and (4) even if justiciable, their allegations failed to state a claim upon which relief could be granted. The Challengers appealed timely. We supply additional facts as necessary below.

## II. DISCUSSION

The Challengers raise four issues on appeal,[2] which we rephrase: whether the circuit court erred in dismissing the Challengers' declaratory judgment claim based on (1) standing, (2) ripeness, (3) the political question doctrine, and (4) failure to state a claim. For reasons stated below, we affirm.

---

[2] The Challengers' brief lists their Questions Presented as:

> 1. The Circuit Court erred when it ruled that the Complaint was based on a non-justiciable "political question."
>
> 2. The Circuit Court erred when it ruled that the Appellants lacked standing and the Complaint was not ripe.
>
> 3. The Circuit Court erred when it dismissed the Complaint for failure to state a claim and declined to issue a Declaration.

Johns Hopkins' brief lists their Questions Presented as:

> 1. DID THE CIRCUIT COURT PROPERLY DISMISS APPELLANTS' DECLARATORY JUDGMENT CLAIM FOR LACK OF STANDING?
>
> 2. DID THE CIRCUIT COURT PROPERLY DISMISS APPELLANTS' DECLARATORY JUDGMENT CLAIM ON THE ALTERNATIVE GROUND THAT IT IS UNRIPE?
>
> 3. DID THE CIRCUIT COURT PROPERLY DISMISS APPELLANTS' DECLARATORY JUDGMENT CLAIM ON THE ALTERNATIVE GROUND THAT IT PRESENTS A POLITICAL QUESTION?
>
> 4. DID THE CIRCUIT COURT PROPERLY DISMISS APPELLANTS' DECLARATORY JUDGMENT CLAIM ON THE ALTERNATIVE GROUND THAT IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED?

"'[T]he standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct.'" *Lipp v. State*, 246 Md. App. 105, 110 (2020) (*quoting Howard v. Crumlin*, 239 Md. App. 515, 521 (2018)).

## A. The Challengers' Declaratory Judgment Allegations Are Not Justiciable.

The Challengers' *first* overall contention is that the circuit court erred in dismissing their case on three different justiciability grounds. As we discuss below, though, the circuit court concluded properly that (1) the Challengers lacked standing to challenge the MOU, (2) their claims were not ripe in any event, and (3) their claims raised nonjusticiable political questions.

### 1. The Challengers lack standing to bring these claims.

Not just anyone can file a lawsuit. "'[S]tanding . . . [goes] to the very heart of whether the controversy before the court is justiciable.'" *State of Md. Comm'n on Hum. Rels. v. Anne Arundel County*, 106 Md. App. 221, 236 (1995) (*quoting Sipes v. Bd. of Mun. & Zoning Appeals*, 99 Md. App. 78, 87–88 (1994)). Plaintiffs can establish standing in three different ways: (1) general standing, (2) property owner standing, and (3) taxpayer standing. The Challengers don't specify the form of standing they claim to have, but the circuit court held, and we agree, that they cannot satisfy the requirements for any category.

#### a. The Challengers' claims can't confer general standing.

To begin, the Challengers lack general standing. "The requirement of standing 'is designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution.'" *Pizza*

*di Joey, LLC v. Mayor & City Council of Balt.*, 470 Md. 308, 343 (2020) (*quoting Kendall v. Howard County*, 431 Md. 590, 603 (2013)). "'Under Maryland common law, standing to bring a judicial action generally depends on whether one is aggrieved, which means whether a plaintiff has an interest such that he or she is *personally and specifically* affected in a way different from the public generally.'" *Id.* (emphasis added) (*quoting Kendall*, 431 Md. at 603). In a normal civil case, an injury (physical, financial, or otherwise) gives rise to standing. When attempting to challenge the actions of government officials—or, in this instance, an agreement between government officials and a private entity that has been authorized by statute—individual standing requires the plaintiff to allege an injury distinct from the impact that the action has on the public in general. Put another way, people who disagree with a government action can't challenge it in court based on their disagreement— they must allege an injury distinctive to them that isn't felt or experienced by the public as a whole.

The Challengers seek to distinguish themselves from the general public in this case on the ground that they live "*near* one of the three University police overlay districts." (Emphasis added). They assert further that "in their ordinary activities and regular daily life, they use public streets and sidewalks designated in the MOU as within the 'primary' jurisdiction of the University's law enforcement agency." But these statements undermine the Challengers' claims rather than supporting them. They concede explicitly that they don't live within the JHUPD jurisdiction, but only live *near* it, as do lots of other people. In no way do they allege a personal and specific impact on their lives that is different from the public that lives near the "campus area" or travels through it. And even if the

Challengers' sidewalks and public streets fell within JHUPD's jurisdiction, which they don't, that still would not establish that they were aggrieved personally by the MOU or by the establishment of the JHUPD. *Compare Pizza di Joey, LLC*, 470 Md. at 344 (The Supreme Court of Maryland found standing where "but for the 300-foot rule, they would have focused their mobile vending businesses in various specific commercial districts in the City . . . . In other words, the Food Trucks specifically altered their business plans as a result of the 300-foot rule."). And because the Challengers haven't alleged any basis on which a court could find them different from the general public, they lack general standing to challenge the MOU.

<blockquote>b.    <u>The Challengers' claims don't confer property owner standing.</u></blockquote>

*Next*, the Challengers lack property owner standing. "The property owner standing doctrine recognizes that owners of real property may be 'specially harmed' by a decision or action (usually related to land use) in a manner different from the general public." *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 519 (2014). Unlike general standing, "[t]he basis of this type of 'standing' is found in the zoning law concept of 'special aggrievement,' which stems, in turn, from the State's statutory zoning laws." *Id.* The Challengers haven't alleged that they have property owner standing, but even if they had, it's not available in their case. Neither the MOU nor the creation of the JHUPD affects how any individual or entity, including the Challengers, may use their land, nor does it implicate any zoning laws. Additionally, there is nothing in the Challengers' complaint that connects the police force's presence to their property rights, even if they live inside a zone

9

that arguably could bring them inside property owner standing for a zoning claim (which, of course, is not what this is). The MOU represents a (statutorily required) step toward creating a police force that has jurisdiction over the JHU campus, JHU's properties, and certain areas of public space abutting the campus. There is no zone around which this MOU can confer property owner standing to challenge it or any element of it, as a change to the zoning law might.

c.    The Challengers lack taxpayer standing.

*Finally*, the Challengers lack taxpayer standing. Plaintiffs must satisfy two separate requirements to demonstrate taxpayer standing. *Paula v. Mayor & City Council of Balt.*, 253 Md. App. 566, 586 (2022). The *first* is "status, meaning the complainant must show he is a taxpayer and 'the suit is brought, either expressly or implicitly, on behalf of all other taxpayers.'" *Id.* (*quoting George v. Baltimore County*, 463 Md. 263, 275 (2019)). The *second* part involves asserting a special interest, and the complainant must allege further that "an action by the government is illegal . . . and that such action satisfies the 'specific injury prong,' such that it may 'injuriously affect the taxpayer's property, meaning that it reasonably may result in pecuniary loss to the taxpayer or an increase in taxes.'" *Id.* (*quoting George*, 463 Md. at 275–76).

As with property owner standing, the Challengers haven't asserted taxpayer standing, at least not using those words. And at no point did the Challengers claim, explicitly or implicitly, that they brought this suit on the behalf of anyone else—which means they would be unable to meet the first prong in *Paula. Id. Second*, the Challengers have not pointed to any pecuniary losses they may experience as taxpayers as a result of

10

the MOU and JHUPD. And *third*, the negotiation between BPD and JHU was anticipated, and indeed required, under ED § 24-1201 *et seq.*, which included an MOU among the conditions precedent to the creation of the JHUPD. *See* ED § 24-1202. The Challengers have failed to allege taxpayer standing as well.

### 2. The Challengers' claims also aren't ripe.

Even if the Challengers had standing to bring these claims, the claims themselves must be ripe for decision. These claims aren't. "A controversy is ripe when 'there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded.'" *Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 143 Md. App. 698, 711–12 (2002) (*quoting Boyds Civic Ass'n v. Montgomery Cnty. Council*, 309 Md. 683, 690 (1987)). "'[T]he declaratory judgment process is not available to decide purely theoretical questions or questions that may never arise . . . .'" *Id.* at 712 (*quoting Hamilton v. McAuliffe*, 277 Md. 336, 340 (1976)). "To address issues which are non-justiciable because they are not ripe 'would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State.'" *Id.* (*quoting Hatt v. Anderson*, 297 Md. 42, 46 (1983)). "Generally, an action for declaratory relief lacks ripeness if it involves a request that the court declare the rights of parties upon a state of facts which has not yet arisen, or upon a matter which is future, contingent and uncertain." *Id.* (cleaned up).

One of the primary assertions the Challengers made at the circuit court is that they "have the right to live in, and travel to and from, their homes—including travel in and around [the] 'Campus Area'—without being subjected to the policing powers of University

11

officers that are unlawfully established and exercised." And on appeal, they argue that their claim is ripe because their "*movements* regularly place them on public streets within those overlay districts. The Complaint was ripe when it was filed." But all of this is speculative: they have assumed, before the JHUPD has even come into being, that the JHUPD will exceed its statutory authority, violate the MOU, and cause negative impacts on them. The Challengers have not alleged any past or present or actual harm as a result of the MOU and the JHUPD, nor a likelihood of discernible harm in the near future. Their complaint posits only they will be living *near* and possibly traveling through the JHUPD's jurisdiction, which *could possibly* lead to harm. Those theoretical and amorphous possibilities do not comprise a justiciable controversy, *id.*, and the circuit court was correct to find the Challengers' complaints were not ripe.

3. *The Challengers' claims raise nonjusticiable political questions.*

Although couched in terms of challenging the validity of the MOU, the Challengers' complaint and arguments here sound overwhelmingly in unhappiness about the General Assembly's decision to authorize Johns Hopkins to form a police department in and on its campus. The question, though, is whether their opposition to that quintessentially political question can support one or more claims justiciable by a court. Claims that present political questions are unreviewable because they cannot be resolved using judicially created standards. *Fuller v. Republican Cent. Comm. of Carroll Cnty.*, 444 Md. 613, 623 (2015). To determine whether a claim is justiciable and not a political question, we determine first "whether the claim presented and the relief sought are of the

12

type which admit of judicial resolution." *Id.* (cleaned up). "And second, whether the structure of government renders the issue presented a political question—that is, a question which is not justiciable in federal or State court because of the separation of powers provided by the Constitution." *Id.* (cleaned up).

The Challengers argue that their claims are not political questions because, they say, a court can review the provisions of the MOU. For what exactly, they don't say. But, they resist the notion that Johns Hopkins and the BPD were authorized by the Act to enter into *this* MOU on these terms. And in any event, the relief they seek—a declaratory judgment invalidating the MOU and declaring it uncurable—challenges the existence of the MOU itself and not its compliance with the statute or its implementation. We agree with the circuit court that it's not our place—and by our, we mean the judicial branch—to pass on the wisdom of this decision. If the Challengers were arguing that the statute exceeded the General Assembly's authority under the Maryland Constitution to pass the Act, or some piece of it, that would be different. But as the circuit court noted aptly, the Challengers' real dispute lies with the General Assembly's policy judgments, and those are not matters courts should be reviewing:

> [I]f [the court were] to invalidate the memorandum of understanding merely because the [Challengers] oppose the creation of the Johns Hopkins Police Department without finding some constitutional flaw in the authorizing statute, it would be a policy determination that encroaches upon the legislature's authority and therefore raises a political question.

As such, the complaint fails to satisfy both of the elements discussed in *Fuller*. *See Fuller*, 444 Md. at 623. And neither of the cases the Challengers cite in support of their effort to

avoid the political question doctrine—*State v. Board of Regents* and *Jackson v. Millstone*—even addresses the doctrine, let alone overcomes it here.[3] The Challengers' claims present nonjusticiable political questions, and the circuit court dismissed them correctly on that ground.

**B.** **The Circuit Court Dismissed The Declaratory Judgment Claim Correctly For Failure To State A Claim.**

Having decided that the Challengers' claims are not justiciable, we could, and normally would, stop there. Nevertheless, since the circuit court went on to find in the alternative that the complaint failed to state a claim, we'll address that in the alternative as well. Because Johns Hopkins moved to dismiss for failure to state a claim upon which relief can be granted, we (like the circuit court before us) "'assume the truth of all well-pleaded facts and allegations in the complaint, as well as all inferences that can reasonably be drawn from them.'" *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121 (2007) (*quoting Morris v. Osmose Wood Preserving*, 340 Md. 519, 531 (1995)). The court may "order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action." *Id.* However, there are limited circumstances in which a court may dismiss declaratory judgment actions, such as

---

[3] *Jackson v. Millstone*, 369 Md. 575, 578–79 (2002), challenged the application of a specific regulation to two requests "for preauthorization for liver transplant surgeries." That case never discussed the political question doctrine because it wasn't necessary for the resolution of that case. In *Stern v. Board of Regents, University System of Maryland*, 380 Md. 691, 694–95 (2004), students sued the Board of Regents alleging, among other things, breach of contract. Eventually, the Supreme Court of Maryland decided the suit was barred by sovereign immunity. *Id.* at 697. There too, there was no discussion of the political question doctrine.

when there is no justiciable controversy. Md. Code (1974, 2020 Repl. Vol.), § 3-409(a)(1) of the Courts and Judicial Proceedings Article; *see State Ctr., LLC*, 438 Md. at 590–91.

The Challengers argue that "[their] [c]omplaint was not a challenge to the enabling legislation[,]" but then state that the "[c]omplaint challenges the validity of [the] MOU." But the Act authorized JHU and the BPD to negotiate and enter into an MOU, and although the Challengers wish they had negotiated some of the terms differently, we agree with the circuit court that their complaint doesn't allege that the MOU violates the Act itself. Even in asking the court to declare the MOU null and void, the complaint never asserts that the MOU violates any provision of the Act itself. We agree with the circuit court that the challenges to the MOU sound, in effect, as an attempt to invalidate the Act itself, a nonjusticiable claim that fails for all of the reasons we have explained. This leaves no ability on the part of the courts to grant relief. And although it generally is inappropriate to grant a motion to dismiss a declaratory judgment claim without declaring the rights of the parties, courts may do so when the controversy cannot be resolved by declaratory judgment, *Simmons v. Md. Mgmt. Co.*, 253 Md. App. 655, 705–06 (2022), and we agree that this is such a case.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANTS TO PAY COSTS.**

15

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0307s23cn.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0307s23cn2.pdf